In re Michael Allen RUSH, a/k/a Michael A. Rush, d/b/a Dutch Goose Club, Debtor.

Carol A. RUSH, Plaintiff–Appellee,

v.

Michael Allen RUSH, Defendant–Appellant.

Bankruptcy No. 85–40428.

No. 87–4094 (85–0141).

United States District Court, D. Kansas.

May 3, 1989.

Robert E. Keeshan, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., for plaintiff-appellee.

John C. Frieden, Frieden & Forbes, Topeka, Kan., for defendant-appellant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from the decision of a bankruptcy judge in an adversary proceeding. The bankruptcy judge decided that a monthly house payment made by the debtor for the house occupied by the debtor's ex-wife and children was not dischargeable. The debtor/appellant contends that the payment is in the nature of a property settlement and therefore should be dischargeable. The appellee, debtor's ex-wife, contends that the payment is in the nature of support and under 11 U.S.C. § 523(a)(5) is not dischargeable. The factual findings of the bankruptcy judge should not be set aside unless they are clearly erroneous. Bankruptcy Rule 8013. Questions of law and mixed questions of law and fact are freely reviewable. *In re Yeates*, 807 F.2d 874, 877 (10th Cir.1986).

The bankruptcy judge based his decision upon the following findings: that the house payment ($110.88) was necessary to meet the living expenses of debtor's ex-wife and children; that the payment was "an award for necessities to provide a roof over the plaintiff's [appellee's] head;" that a disparity in income of the parties at the time of the divorce made it necessary for the debtor to pay part of the housing cost; and that without the payment in question, the support ordered by the state court judge would have been inadequate.

The appellant argues primarily that the payment was detailed in the "property settlement" portion of the divorce decree. It was not listed as alimony or child support. Furthermore, unlike alimony, the obligation to make the payment did not cease upon the death or remarriage of the appellee. Appellant also notes that the payment derives from the second mortgage taken upon a house, purchased originally from appellee's grandmother, in return for a $10,000 loan for appellant's business. Upon their divorce, appellee received the house and the first mortgage. Appellant received the business and the obligation to pay the second mortgage on the house. The parties considered it "fair" that appellant pay back

the $10,000 borrowed on the home for the ownership of his business.

The Tenth Circuit provided some guidance for deciding this appeal in *In re Goin*, 808 F.2d 1391, 1392–93 (10th Cir.1987). There, the court stated:

Generally, the determination of whether an obligation arising out of a divorce settlement is support is a matter of federal law, not state law. *In re Long*, 794 F.2d 928 (4th Cir.1986). Although state court decisions are to be regarded with deference, "bankruptcy courts are not bound by state laws that define an item as maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement." *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983).

Federal courts have held that a bankruptcy court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984). Several factors are pertinent to the bankruptcy court's determination of whether the debt is support: (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support. *Shaver v. Shaver*, 736 F.2d at 1316.

Other guidance is contained in *In re Yeates, supra*, 807 F.2d at 878. There, the court recognized the value of an agreed divorce decree in determining the intent of the parties.

A written agreement between the parties is persuasive evidence of intent. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986). Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control. On the other hand, if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence.

Such "extrinsic evidence" included: the factors mentioned in the *Shaver v. Shaver* opinion; the testimony of the parties at the divorce hearing; and the need for support, which the Circuit considered quite important.

The spouse's need for support is a very important factor in determining the intent of the parties. When the agreement is ambiguous, evidence that payment of the debt is necessary in order for the plaintiff to maintain daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support.

807 F.2d at 879.

Recently, the Circuit again reviewed this issue in *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989). There, the court examined a settlement agreement labeled a "property settlement." In spite of the label, the court affirmed the finding that the settlement agreement placed nondischargeable support obligations upon the debtor. This finding was based upon the following facts:

The settlement agreement segregates the property settlement provisions from appellant's [debtor's] obligations, *see Yeates*, 807 F.2d at 879; the agreement states that the obligations imposed upon appellant [debtor] are in consideration of appellee "relinquishing any rights that she might have against [appellant] for support," *see id.;* the parties had a minor child at the time of the divorce and appellant [debtor] had substantially more income tha[n] appellee, *see Goin*, 808 F.2d 1392–93; the agreement provides that appellant [debtor] is to make payments directly to appellee over a substantial period of time, *see id.* at 1393; and the obligation to make monthly payments to appellee terminates on remarriage or death, *see id.* Additionally, as the dis-

trict court found, "[t]he provisions in the agreement in dispute had the actual effect of providing support to the appellee —enabling her to maintain a home … and have a monthly income."

865 F.2d at 1166.

In the present case, the appellee had custody of the marriage's three minor children. There was an imbalance of income. There was a need for support. Indeed, it is undisputed that the payments in question were needed to make the house payment. The payments were to be made directly to plaintiff in installments over a substantial period of time. These facts support the bankruptcy court's order. We acknowledge that the payments were described in the divorce decree as part of the property division of the parties and that the payments are not contingent upon the death or remarriage of appellee. Nevertheless, the fact sheet prepared by appellee and admitted without objection or significant correction as an exhibit at the divorce hearing, clearly demonstrates a shared intention to calculate the payments as part of appellant's support obligation. This is confirmed by appellant's testimony during the 2004 exam, as cited in appellee's brief.

In sum, the court finds that the written agreement between the parties is ambiguous when construed with the fact sheet admitted at the hearing. The preponderance of the evidence demonstrates that the parties intended the payments be in the nature of support. We therefore agree with the bankruptcy court that appellant's obligations are covered by § 523(a)(5) and, therefore, are not dischargeable in bankruptcy.

The order of the bankruptcy court is affirmed. The appellee has requested that a judgment for attorney's fees be entered against appellant. The court does not view this appeal as frivolous or made in bad faith. We decline to assess attorney's fees against appellant. A copy of this order shall be transmitted to the Clerk of the Bankruptcy Court.

IT IS SO ORDERED.