In re Sherry Ruth GOOD, Debtor.

Sherry Ruth GOOD, Plaintiff,

v.

Steven M. GOOD, Defendant.

Bankruptcy No. 92–20473–7.
Adv. No. 93–6003.

United States Bankruptcy Court,
D. Kansas.

July 13, 1995.

Betsie R. Czeschin of Muller and Muller, Kansas City, Missouri, for Debtor.

Robert D. Berger, Overland Park, Kansas, for Steven M. Good.

### MEMORANDUM OF DECISION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The dischargeability questions before the Court arise on cross motions for summary judgment.[2] Both parties agree that no issue of material fact remains for determination and the questions are ripe for summary judgment.

---

1. Plaintiff/debtor Sherry Ruth Good appears by her attorney, Betsie R. Czeschin of Muller & Muller, Kansas City, Missouri. Defendant-creditor Steven M. Good appears by his attorney, Robert D. Berger of Overland Park, Kansas.

2. The pleadings do not contest the core nature of the proceeding. The Court finds that this proceeding is core under 28 U.S.C. § 157; and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the

Sherry and Steven Good were married on June 19, 1976, and divorced on June 6, 1991.[3] Sherry filed a petition for Chapter 7 relief on March 2, 1992.

Sherry's Complaint to Determine Dischargeability of Debt, filed January 14, 1993, and amended January 21, 1993, prays that the Court find dischargeable a debt attributed to her in a contested divorce. Her theory is that the debt springs from a division of property, rather than from an obligation to pay maintenance. Steven Good's answer contends that the debt referred to in Sherry's complaint is nondischargeable maintenance under 11 U.S.C. § 523(a)(5)(B).

In addition, Steven's answer includes a counterclaim asking the Court to determine that another debt imposed on Sherry by the divorce decree—a $11,500 judicial lien on a homestead awarded to Sherry—is also nondischargeable maintenance.

The first question is the one raised by Sherry's complaint. It involves Steven's loan from the Higher Education Assistance Foundation. The divorce court divided the debt on this loan with the following comment:

As concerns the debt owed the Higher Education Assistance Foundation, the Court makes the following findings of fact. Both petitioner [Sherry Good] and respondent [Steven Good] bettered themselves during the marriage as regards their educational training and background. Petitioner obtained a degree in nursing and the costs for which were assumed primarily by the respondent. Similarly, respondent increased his educational training by finishing his degree in Human Resources and his training as a sheet metal journeyman. The debt in question was incurred to pay for respondent's latest educational achievement. By their mutual efforts

---

District Court effective July 10, 1984 (D.Kan. Rule 705).

3. Journal Entry and Decree of Divorce filed June 6, 1992, in *In the Matter of the Marriage of Good*, Case No. 90 D 275 in the District Court of Miami County, Kansas, Exhibit A attached to Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment filed October 15, 1993, at 1.

their [sic] parties have increased their respective income earning potential which is now essentially equivalent. While respondent attempts to attach particular significance to the respondent's [sic] actions and their detrimental effects upon his "handyman" business, the Court is not persuadedof [sic] such. The current differences in income are not representative of the parties [sic] history with regard to earning nor are they representative of the respondent's ability to earn in the future based upon his education. The Court therefore divides the debt owed Higher Education Assistance Fund through the Household Bank as follows: Petitioner [Sherry Good] for and as *maintenance* to the respondent [Steven Good] shall pay $4,000.00 of the principle balance plus $2,013.08 of the interest charged by paying one-half of the monthly payments on said loan as set out in Respondent's Exhibit "3". The remainder of said debt shall be the responsibility of the respondent. No further *maintenance* awarded either party.[4]

(Emphasis added.)

Earlier in that part of the decree addressing child support, the court found: "Petitioner's domestic gross income is $2,666.00; respondent's domestic gross income is $1,308.50...."[5] Although Sherry enjoyed the higher income, she failed to make the monthly maintenance payments as ordered, causing Steven Good to move the divorce court for an order reducing the maintenance obligation to a formal judgment. Accordingly, on February 25, 1992, the District Court of Miami County, Kansas, ruled: "The motion to reduce the *maintenance* order to judgment is sustained and the respondent [Steven Good] is granted a judgment against petitioner [Sherry Good] for *maintenance* in the amount of $6,013.08, together with 11%

interest per annum from May 22, 1991."[6] (Emphasis added.)

■ Section 523(a)(5)(B) of the Bankruptcy Code controls this question. It reads in relevant part:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree or other order of a court of record, ..., or property settlement agreement, but not to the extent that—

(A) ...; or

(B) such debt includes a liability designated as alimony, maintenance, or support, *unless such liability is actually in the nature of alimony, maintenance, or support....*

(Emphasis added.) Obviously, Congress has given bankruptcy courts some latitude in deciding whether a liability designated by a state court as alimony, maintenance or support is indeed such for purposes of discharge.

■ When the liability to be examined arises from an agreement of the parties, the bankruptcy court's focus when deciding whether § 523(a)(5)(B) is satisfied must be on the intent of the parties. *In re Yeates,* 807 F.2d 874 (10th Cir.1986) (holding that in determining whether a debt is nondischargeable support obligation, bankruptcy court must ascertain intention of parties at time they entered into stipulation or property settlement agreement).

---

**4.** Journal Entry and Decree of Divorce filed on June 6, 1991, in *In the Matter of the Marriage of Good,* Case No. 90 D 275 in the District Court of Miami County, Kansas, Exhibit A attached to Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment filed October 15, 1993, at 4–5.

**5.** *Id.* at 2.

**6.** Journal Entry filed February 25, 1992, in *In the Matter of the Marriage of Good,* Case No. 90 DV 275 in the District Court of Miami County, Kansas, Exhibit B attached to Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment filed October 15, 1993, at 1. The state court overruled Steven M. Good's companion request to offset child support arrearage against existing judgments.

When a divorcing husband and wife cannot agree on issues of property and maintenance, among other things, the divorce court makes decisions on the contested issues for them. When this is the case, a bankruptcy judge deciding the character of divorce debts must focus on the state judge's intent as expressed in the decree. Unless the language in the decree is ambiguous on its face, the state court's intent in awarding maintenance and in dividing debt obligations of divorcing parties should be determined within the four corners of the decree.[7] Although a bankruptcy court's *conclusion* about the true character of a debt may differ from that of the divorce court in determining whether an obligation is dischargeable under federal law, the bankruptcy judge should give the state court's determination considerable deference. *In re Goin,* 808 F.2d 1391, 1392 (10th Cir.1987).

Although Sherry's brief contends that the divorce decree is ambiguous, the Court does not agree. The divorce judge found that Sherry should pay "maintenance to the respondent" and that there should be "[n]o further maintenance awarded either party."[8] When Steven moved to reduce the language of the decree to formal judgment, the state court said, "[R]espondent is granted a judgment against the petitioner for maintenance in the amount of $6,013.08...."[9]

Other language from the decree, quoted earlier, acknowledges the parties' mutual efforts to increase their "income earning potential" and notes that there were "current differences in income"[10] of the parties, citing figures showing that Sherry earned twice as much as Steven. Contrary to debtor's contentions, these references do not create ambiguity in the document. Rather, they make it plain upon the face of the decree that the judge intended an equalizing award of "maintenance" in favor of Steven. The more formal judgment entered later verifies this intent. Giving due deference to the plain language of the divorce court, the Court rules that the judgment for $6,013.08 denominated as maintenance is nondischargeable.

The second question is raised by Steven's counterclaim. It involves the $11,500 judicial lien in his favor. In the divorce decree, the state court noted an agreement and ruled as follows:

The parties accumulated certain real estate during their marriage and it is stipulated and agreed that the respondent's equitable share of his marital interest in said real estate equates $11,500.00. Respondent is granted a judicial lien against said real estate which is to be satisfied by the payment to respondent in the sum of $11,-500.00 within 90 days of the filing of this order.[11]

Sherry failed again to pay the debt to Steven, and in February 1992, the mortgage holder on the property initiated foreclosure proceedings. The foreclosure action resulted in the extinguishment of Steven's judicial lien interest in the property. According to Steven's brief, Sherry subsequently redeemed the property from the mortgagee. Sherry's brief verifies this, but clarifies that she had to further encumber the property in order to redeem it.[12]

7. Steven Good's memorandum in support of his motion for summary judgment has attached to it the affidavit of the divorce court judge, Richard M. Smith. This Court disregards the affidavit.

8. Journal Entry and Decree of Divorce filed on June 6, 1991, in *In the Matter of the Marriage of Good,* Case No. 90 D 275 in the District Court of Miami County, Kansas, Exhibit A attached to Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment filed October 15, 1993, at 5.

9. Journal Entry filed February 25, 1992, in *In the Matter of the Marriage of Good,* Case No. 90 DV 275 in the District Court of Miami County, Kansas, Exhibit B attached to Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment filed October 15, 1993, at 1.

10. Journal Entry and Decree of Divorce filed on June 6, 1991, in *In the Matter of the Marriage of Good,* Case No. 90 D 275 in the District Court of Miami County, Kansas, Exhibit A attached to Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment filed October 15, 1993, at 5.

11. *Id.* at 2–3.

12. Absent some showing of collusion with the mortgagee, the fact that Sherry redeemed the property does not give rise to any equitable complaint by Steven.

In his brief, Steven argues that because the $11,500 judicial lien was impressed upon real estate that was his prior homestead, the debt is nondischargeable, even though when the court created the debt and lien, it appeared to be dividing property, not granting maintenance. Under Kansas law, no precedent known to this Court supports defendant's position that the division of marital homestead property is in the nature of "maintenance" simply because that property has a statutory and constitutional status as exempt. The division of marital property does not arise from an obligation of support. Instead, property division serves the purpose of insuring that each spouse receives an equitable portion of the parties' assets accumulated during marriage.

Unfortunately for Steven, the lien rights in the homestead granted him by the divorce court were extinguished by the mortgage foreclosure process. This event serves to emphasize that those rights were derived from a division of property rather than an award of maintenance. The Bankruptcy Code permits discharge of property debts imposed by a divorce decree. Therefore, the debt secured by the judicial lien is dischargeable.

Finally, Sherry suggests in her brief that Steven's complaint was filed out of time, albeit she fails to mention that hers was also. This argument has no merit because Judge Franklin ruled on October 7, 1992, as reflected by the Clerk's courtroom minute sheet of that date, that before a pending contempt motion could be addressed, the Court would deal with the dischargeability issue. This ruling permits the filing of the complaint and the counterclaim out of time.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.