In re Robert Leslie TRUMP, Debtor.

Sherri Lynn Lewis, Plaintiff,

v.

Robert Leslie Trump, Defendant.

Bankruptcy No. 03–23148–7.
Adversary No. 03–6134.

United States Bankruptcy Court,
D. Kansas.

May 14, 2004.

David A. Kraft, Berman, DeLeve, Kuchan & Chapman, LC, Kansas City, MO, for Plaintiff.

Kenneth C. Jones, Norton, Hubbard, Ruzicka & Kreamer, LC, Olathe, KS, for Debtor and Defendant.

---

1. Subsequent statutory references are to the Bankruptcy Code 11 U.S.C. §§ 1101 et seq. unless otherwise noted.

2. Defendant's Motion for Summary Judgment filed November 17, 2003 (Doc. # 7); Plaintiff's Cross Motion for Summary Judgment filed January 2, 2004 (Doc. # 11). Plaintiff

*MEMORANDUM OPINION*

ROBERT D. BERGER, Bankruptcy Judge.

These dischargeability proceedings under 11 U.S.C. § 523(a)(5)[1] come before the Court on cross motions for summary judgment filed by the parties.[2] The pleadings do not contest the core nature of this proceeding. The Court finds that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. §§ 1334 and 157.

■ Sherri Lynn Lewis (f/k/a Trump) and Robert Leslie Trump were married on July 19, 1987, and their Decree of Divorce was filed in Missouri on February 3, 1999. Robert filed a petition for Chapter 7 relief on July 29, 2003. On October 16, 2003, Sherri timely filed a complaint under § 523(a)(5) to determine the dischargeability of Robert's divorce obligations to Sherri. Both parties have filed motions for summary judgment on the complaint, and the Court finds that there do not exist genuine issues of material fact to bar entry of judgment on Sherri's complaint. The Court has reviewed the motions for summary judgment and memoranda submitted in support thereof, as well as memoranda submitted in opposition, in consideration of which the Court rules and enters judgment as follows:

1. Robert's obligation to Sherri to make payments on the second mortgage note in the total amount of $30,407.57, plus any applicable interest accruing thereon as provided un-

appears by her attorney, David A. Kraft of Berman, DeLeve, Kuchan & Chapman, L.C., Kansas City, Missouri. Defendant appears by his attorney, Kenneth C. Jones of Norton, Hubbard, Ruzicka & Kreamer, L.C., Olathe, Kansas.

der Missouri state law, is nondischargeable.

2. This Court abstains from determining whether monthly mortgage insurance protection premiums of $101.50 are a proper judgment against Robert and nondischargeable. The Court directs the parties to seek a determination before a state court of competent jurisdiction whether Sherri is entitled to a judgment in this amount and, if so, the state court may exercise its concurrent jurisdiction to determine the dischargeability of same.[3]

3. This Court abstains from determining whether Sherri is entitled to a nondischargeable judgment for her attorney's fees and costs of $3,515.50 incurred in her prosecution of this complaint. The Court directs the parties to seek a determination of this issue before a state court of competent jurisdiction.

*Facts*

To resolve the then-outstanding divorce issues, Robert and Sherri entered into a Marital Settlement and Separation Agreement ("Agreement") dated January 8, 1999, which Agreement was subsequently approved by the Circuit Court of Jackson County, Missouri, on February 3, 1999. Robert and Sherri have twin children of the marriage who are now age 13.

The Agreement requires that Robert pay 50 percent of the medical costs associated with their children and 50 percent of the children's college education expenses subject to conditions not relevant to this Court's analysis.

Robert was ordered to pay child support to Sherri in the amount of $801.00 per month plus a portion of extracurricular expenses for the children. The parties' marital residence was assigned to Sherri, and Robert was required to transfer his interest in the property via a quit-claim deed. At the time of the divorce, two mortgages encumbered the property: the first mortgage note had a balance of approximately $159,505.00; the second mortgage note had a balance of approximately $44,000.00. Since the approximate value of the residence was $200,000.00, there was little, if any, equity in the residence. Retirement accounts totaling less than $5,000 and other personal property of *de minimis* value (plus two encumbered automobiles) were divided between Sherri and Robert. Excluding the mortgage notes and two auto loans, the debt divided between the parties was less than $10,000.00.

Under a section of the Agreement captioned "Assumption of Debts and Liabilities," Robert agreed to continue to make payments on the second mortgage in an amount of not less than $632.00 per month until the second mortgage was refinanced by Robert, and Sherri and the marital residence were released from the second mortgage obligations. Once the second mortgage was paid off or after 48 months, under a section labeled in the Agreement as "Support," Robert was to contribute the sum of $100.00 per month for the benefit of the children's college education.

The parties do not agree as to the use of the funds secured by the second mortgage; however, this Court finds the use of the funds irrelevant to the determination of dischargeability and therefore disregards the contentions of both parties. Beginning January 2003, Robert failed to comply with

---

3. The state court has concurrent jurisdiction to determine the dischargeability of obligations under § 523(a)(5). *See Matter of Marriage of Sailsbury,* 13 Kan.App.2d 740, 779 P.2d 878 (1989).

the requirement under the Agreement to make payments on the second mortgage note, and contempt proceedings were initiated against him prior to the filing of his bankruptcy petition. Under the Agreement, payment of the first mortgage note was assigned to Sherri.

Robert made payments on the second mortgage until the end of 2002, but experienced an $18,000 per year reduction in pay during 2002. Robert's income at the time of the divorce was approximately $53,000 per year, and Sherri's income was approximately $45,000–$50,000 per year. The monthly payment on the second mortgage at the time of the divorce was approximately $632.00. Because of his reduced income during 2002, Robert obtained approval from the second mortgagee to reduce his payments to $229 per month. However, even with this reduction, Robert defaulted on the second mortgage payments. Robert's payments on the second mortgage were not treated as maintenance for income tax purposes (i.e., they were not deducted from Robert's income and were not included in Sherri's income).

Because of Robert's default, between January 2003 and September 2003 Sherri made total payments on the second mortgage note in the amount of $1,606.43. On September 23, 2003, Sherri refinanced the two mortgage notes and satisfied the second mortgage note balance with a payment of $28,801.14. Sherri also alleges that she made insurance premium payments in the amount of $440.00; however, her brief does not establish the purpose for these insurance premiums, and the Court does not include this amount in calculating Robert's obligations to Sherri with regard to the second mortgage note. Sherri's total payments on the second mortgage note during the year 2003, including refinancing the note, aggregate $30,407.57.

Under a section titled "Maintenance," the Agreement provides:

> The parties agree, after examining all relevant factors, including the situation of the parties at the present time, that no maintenance is to be paid by either party for the support of the other, recognizing that, by this provision, they each waive the right to return to court to request and receive maintenance.

The Agreement in a section titled "General Provisions" and subtitled "Provisions for Failure to Perform Obligations with Notice Required" provides for the award of attorney's fees and litigation costs to the prevailing party reasonably expended in the prosecution of an action to enforce the Agreement. The attorney's fees clause in the Agreement sets out a 10–day notice requirement.

Under a section of the Agreement titled "General Provisions" and subtitled "Binding Effect," the following language is contained:

> The provisions and obligations contained herein are to be considered as not dischargeable in bankruptcy.

Sherri alleges that the obligations described are not dischargeable in Robert's bankruptcy under § 523(a)(5). With the exception of the child support obligation and other costs directly related to the children's expenses, such as medical expenses, Robert contends that his obligations are dischargeable. The obligations on which the parties seek a determination of dischargeability are:

1. Robert's obligation to make payments on the second mortgage and a money judgment on this obligation in the amount of $30,407.57, plus statutory interest;

2. Sherri's assertion of a claim against Robert for her obligation to pay monthly mortgage insurance premi-

ums in the amount of $101.50, now necessary because Sherri refinanced the first and second mortgage notes on the residence and combined them into one note;

3.  Sherri's assertion of a claim in the amount of $3,515.50 for Sherri's attorney's fees to prosecute this adversary proceeding against Robert.

### Law

Section 523(a)(5)(B) controls the Court's determination with regard to dischargeability of the foregoing debts.[4] Bankruptcy law, with its underlying policy to provide the honest debtor with a fresh start, frequently collides with divorce law and the mutual obligations that arise from dissolution of a marriage. A debtor files bankruptcy to seek refuge from creditors within its protective walls. In § 523(a)(5), Congress provided to the non-filing ex-spouse an opportunity to breach those walls and to render some or all of the debtor's obligations to the ex-spouse nondischargeable in bankruptcy. The countervailing forces of a bankruptcy discharge and a debtor's obligations under a divorce decree create a situation in which at least one party and, at times, both parties are less than content when they emerge from bankruptcy proceedings. Section 523(a)(5) creates a sometimes tenuous scale upon which to weigh the conflicting interests of the debtor under the Bankruptcy Code

with those of the ex-spouse and the divorce obligations between the parties. Section 523(a)(5) "departs from the general policy of absolution, or 'fresh start'" in order to "enforce an overriding public policy favoring the enforcement of familial obligations."[5]

When reviewing the Agreement between Robert and Sherri to determine what, if any, obligations Robert owes to Sherri are nondischargeable, this Court is not bound by the manner in which the parties' obligations are labeled under the Agreement. Treatment of Robert's obligations under the laws of the State of Missouri or by the labels associated with those obligations under the Agreement do not bind this Court's inquiry. Whether Robert's obligations to Sherri are excepted from discharge under § 523(a)(5) is ultimately a matter of federal law. It is the charge of this Court to determine the parties' shared intent at the time of the divorce and the substance of the Agreement predicated on the circumstances that existed at the time of the divorce.[6]

Both Sherri and Robert have filed affidavits in conjunction with their motions for summary judgment that indicate their subjective understandings with regard to the Agreement at the time of the divorce; however, the court in *In re Sampson* did not find the parties' alleged subjective intent at the time of the divorce sufficient to

---

4. § 523. Exceptions to discharge.

    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    . . . .

    (5) to a spouse, former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree or other order of a court of record, ..., or property settlement agreement, but not to the extent that—

    (A) ...; or
    (B) such debt includes a liability designated as alimony, maintenance, or support, *unless such liability is actually in the nature of alimony, maintenance, or support;*

    . . . .

(emphasis added).

5. *In re Sampson*, 997 F.2d 717, 721 (10th Cir.1993), citing and quoting *Shaver v. Shaver*, 736 F.2d 1314, 1315–16 (9th Cir.1984).

6. *In re Sampson*, 997 F.2d at 723.

resolve the issue.[7] Since both Robert and Sherri indicate subjective intents and beliefs with regard to the Agreement that are diametrically opposed, this Court is left to determine the shared intent of the parties based upon other evidence.[8] The determination of whether Robert's obligations to Sherri are dischargeable or whether they are nondischargeable is a factual inquiry conducted on a case-by-case basis. A fundamental question is whether the parties' shared intent was that Robert's obligations to Sherri were in the nature of support.[9] If the obligations are actually the division of property or debts, then these obligations are dischargeable under § 523(a)(5).[10]

In *In re Yeates*, the court observed that the determination of the parties' shared intent "must be made by looking at the substance of the agreement viewed in the crucible of surrounding circumstances."[11] However, the *Yeates* decision also stated that the written agreement between the parties is persuasive evidence of intent in which inquiry would only be made outside of the agreement if the agreement were ambiguous.[12] The *Yeates* decision thus could be read to restrict this Court's review to the agreement between the parties, unless the agreement were ambiguous.

The *Sampson* court reconciled *Yeates* with a seemingly broader approach set out in *In re Goin*,[13] a decision which was issued by the Tenth Circuit Court approximately one month after *Yeates*. Interpreting *Goin*, the *Sampson* court stated that "neither state law nor the parties' characterization determined whether a debt was nondischargeable under section 523(a)(5)."[14] Specifically, *Goin* directed that "a bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation."[15] *Goin* set out four non-exhaustive factors pertinent to this inquiry[16] and directed consideration of the parties' agreement and the substance of the obligation.

To reconcile the apparent inconsistencies between *Yeates* and *Goin*, the court in *Sampson* concluded that whether an obligation is excepted from discharge under § 523(a)(5) is "a dual inquiry into both the parties' intent and the substance of the obligation," and the crucial issue is

---

7. *Id.*

8. *Good v. Good (In re Good)*, 187 B.R. 337, 340 n. 7 (Bankr.D.Kan.1995), wherein Judge Flannagan refused to consider the affidavit of the state court judge regarding the state court's intent.

9. *In re Sampson*, 997 F.2d at 721.

10. Sherri did not seek in her complaint a determination of dischargeability under § 523(a)(15).

11. *In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986)(citing *In re Crist*, 632 F.2d 1226, 1229 (5th Cir.1980)); see also *In re Sampson*, 997 F.2d at 721.

12. *In re Yeates*, 807 F.2d at 878.

13. 808 F.2d 1391 (10th Cir.1987).

14. *In re Sampson*, 997 F.2d at 722. The *Sampson* court rejected the suggestion in *Yeates* that an unambiguous agreement normally controls the court's determination.

15. *In re Sampson*, 997 F.2d at 722–23, quoting *In re Goin*, 808 F.2d at 1392.

16. (1) The absence of an explicit maintenance division under the circumstances in which the payee had a demonstrated need for support at the time of the divorce; (2) disparate income between the parties and the presence of minor children; (3) whether payments were directed to the payee in installments over a period of time; and (4) whether the obligation terminates upon death or remarriage. *In re Goin*, 808 F.2d at 1392–93.

"whether the obligation imposed by the divorce court has the purpose *and* effect of providing support for the spouse."[17] A "spouse's need for support is a very important factor,"[18] and "the crucial issue is the function the award was intended to serve."[19] If the effect of the debtor's obligation is to maintain a standard of living for his ex-spouse and children, to provide monthly income, and to enable the ex-spouse to maintain a home, then these are indicia that the debtor's obligation is intended as support.[20] Also, the relative financial circumstances of Robert and Sherri at the time of the divorce are relevant.[21]

▮▮▮ Sherri urges that the language in the Agreement that purportedly bars discharge of Robert's obligations to her in bankruptcy should be honored by this Court. However, prepetition agreements to waive the benefits of a bankruptcy discharge are void, and this Court is not bound by this language.[22] Likewise, Robert urges that this Court should find the obligations in question to Sherri dischargeable because of the language contained in the Agreement wherein the parties waived maintenance to one another. However, § 523(a)(5) is not so restrictive. If Robert's obligations to Sherri are in the nature of support, regardless of a waiver of maintenance or other labels and language contained in the Agreement, this Court is at liberty to find his obligations nondischargeable under § 523(a)(5). It is also Robert's assertion that since his obligation to pay the second mortgage is set out in the Agreement in the section labeled "Assumption of Debts and Liabilities," his obligation to Sherri to pay the second mortgage is in the nature of a division of debts or property and, hence, dischargeable. This argument is rejected because this Court is not bound by the labels set out in the Agreement and, even if it were, the language in the Agreement is not inconsistent with a finding that this obligation is in the nature of support. There are circumstances in which the assumption of debt functions as support.

*Robert's Obligation to Pay Second Mortgage Note Secured by Former Martial Residence*

▮▮▮ Robert's obligation under the Agreement to make payments on the second mortgage note secured by the parties' former residence, and ultimately to satisfy this note, is in the nature of support and not dischargeable under § 523(a)(5). The fact that under the Agreement Robert was to make payments to the second mortgagee, who was a third party, does not prohibit this Court from finding his obligation nondischargeable.[23] The court in *Miller* emphasized form over substance and that it is the nature of the debt owed that determines dischargeability and not to

---

17. *In re Sampson*, 997 F.2d at 723, quoting in the second statement 2 HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 17.7, at 305 (2d ed.1987); emphasis is provided by the *Sampson* court.

18. *In re Yeates*, 807 F.2d 874, 879 (10th Cir. 1986).

19. *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983).

20. *In re Sampson*, 997 F.2d at 726.

21. *Id.*

22. *See In re Cole*, 226 B.R. 647, 652–53 (9th Cir. BAP 1998); *see also In re Mascoll*, 246 B.R. 697 (Bankr.D.C.2000).

23. *See In re Miller*, 55 F.3d 1487 (10th Cir.1995)(holding that guardian *ad litem* and psychologist's fees incurred for the benefit of the parties' minor children attendant to divorce proceedings were a nondischargeable obligation, even when payable to a third party).

whom the debt is owed.[24] Although exceptions to discharge are narrowly construed and must be proved by a preponderance of the evidence, "the policy underlying section 523(a)(5), however, favors enforcement of familial support obligations over a 'fresh start' for the debtor." [25]

In *In re Robinson*,[26] the debtor was ordered in divorce proceedings to make payments on a second mortgage note secured by the marital home assigned to his ex-wife. The court excepted the debtor's obligation from discharge under § 523(a)(5), even though the debtor's ex-spouse had refinanced the obligations secured by the home and satisfied the second mortgage note. The court found that although the second mortgage note had been satisfied upon the refinancing, "the status of the underlying debt has no effect on the original obligation to hold one's spouse harmless." [27] Since the Agreement between Robert and Sherri contains indemnity and hold harmless language with regard to the assumption of indebtedness, the refinancing of the second mortgage note by Sherri does not bar a finding of nondischargeability. Additionally, considering the court's emphasis in *In re Miller* not to put form over substance and to focus on the nature of the obligation, this Court would find Robert's obligation to Sherri nondischargeable absent the hold harmless and indemnity language.[28] Even absent such language, the Agreement created a legally enforceable obligation for Robert to make payments on the second mortgage note.

The Agreement provides that once Robert satisfies the second mortgage obligation, he is to commence payments in the amount of $100 per month to a savings plan for the benefit of his children's college education. Since a parent's obligation to pay medical and educational expenses is ordinarily considered in the nature of support, this tie-in is further evidence that Robert's obligation is in the nature of support.

It is the parties' shared intent and circumstances at the time the Agreement was signed that control this Court's determination. Robert argues that at the time of the divorce, the parties' incomes were roughly equal, but that he has now experienced a significant downturn in his income. The parties' current income is not relevant to the determination of dischargeability under § 523(a)(5).[29] This Court recognizes that, at this time, Robert may not be able to afford to satisfy this obligation. Unfortunately for Robert, consideration of his current financial circumstances is not a component of this Court's analysis. The Agreement does not condition Robert's obligation on future circumstances. This Court is constrained to render a decision based upon the circumstances that existed at the time of the divorce. The provision of shelter for one's family is ordinarily in the nature of support and, although not conclusive, represents strong indicia that Robert's obligation to Sherri to make payments on the second mortgage is in the nature of support.[30]

---

24. *Id.* at 1490.

25. *Id.* at 1489.

26. 921 F.2d 252 (10th Cir.1990).

27. *Id.*

28. *Id.*

29. *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989).

30. *See In re Rush*, 100 B.R. 55 (D.Kan.1989)(stating that the debtor's obligation to make a monthly house payment for the house occupied by the debtor's ex-spouse and children is nondischargeable under § 523(a)(5)). *See also In re Robinson, supra.*

Robert alleges that his obligation to make the second mortgage note payment was actually division of debt. However, excluding the two mortgage notes on the parties' marital residence, the debt and the equity in the marital property were split relatively equally between the parties. Robert's obligation to make payments on the second mortgage was not a balance sheet adjustment to divide the property and debts equally between the parties. Robert's obligation is not a dischargeable division of debt because the function of his obligation was to allow his wife and children to remain in the marital residence as their shelter. If the function, purpose, and effect of Robert's obligation to pay the second mortgage note was to provide support for Sherri and his children, then Robert's obligation is in the nature of support and nondischargeable.

Not every obligation associated with the marital residence of divorced parties is in the nature of support, and a rule to that effect would be too inflexible to accommodate this Court's necessary inquiry into the shared intent of the parties as reflected in the Agreement and the surrounding circumstances. The court's demand in *In re Sampson* that bankruptcy courts consider a myriad of factors in reaching a determination of dischargeability belies the use of a rigid rule and requires an examination of the unique factors that serve as the genesis for the respective obligations of the parties under the Agreement. Every marriage is unique and, if the marriage ends in a divorce between the parties, every divorce is no less unique. This case-by-case analysis applied to Robert and Sherri's divorce and Agreement leads this Court to conclude that Robert's obligation to make payments on the second mortgage note was in substance support, the function of which was to provide shelter to Sherri and their children.[31] This conclusion most accurately reflects the shared intent of the parties.

■ For income tax purposes, Robert has not deducted the second mortgage payments from his income, and Sherri has not included the second mortgage note payments in her income, which is the traditional treatment of maintenance obligations under the Internal Revenue Code. The tax treatment of the obligation is only one of many factors this Court should consider and it is not determinative.[32] The definition of "maintenance" for tax purposes is not identical to the language contained in § 523(a)(5), the latter of which expands the traditional notion of maintenance and child support to include all obligations that are in the nature of support. The § 523(a)(5) definition of "support" is more expansive than that included in the Internal Revenue Code and requires consideration of the function, purpose, and effect of the obligation.[33] The tax treatment of the obligation is only one factor relevant to this Court's analysis; to hold otherwise would potentially subvert the *Sampson* court's mandate to look beyond the labels set out in the agreement.[34] Despite the tax treatment of Robert's obligation to Sherri, Sherri has proven the nondischargeability of Robert's obligation

---

31. *See In re Sampson,* 997 F.2d 717, 725 (10th Cir.1993); *see also In re Yeates,* 807 F.2d 874, 879 (10th Cir.1986).

32. *In re Sampson,* 997 F.2d at 724–25 n. 6.

33. COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.04[10] at 647–48 wherein it is observed

that it may not be "necessarily inconsistent to take different positions on whether payments are alimony under two different statutes with different definitions of alimony and different purposes."

34. *In re Sampson,* 997 F.2d at 724–25 n. 6.

to pay the second mortgage note under § 523(a)(5).

*Mortgage Insurance Premiums*

▮ Robert made payments on the second mortgage note for approximately three years after conclusion of the divorce proceedings. By the end of 2002, Robert defaulted on this obligation, and payments were not made by Robert to the second mortgagee. Undoubtedly faced with the peril of losing her home, Sherri refinanced the first and second mortgage notes into a single mortgage note. Because of the value of the home in relation to the total debt refinanced, Sherri was required to and did procure mortgage insurance protection, the cost of which is $101.50 per month. This obligation commenced November 2003. The Court presumes that once there is sufficient equity in the home, Sherri will be able to terminate the MIP premium; however, until such time, these monthly payments will continue.

It is Sherri's allegation that since she was forced to refinance the home and combine the first and second mortgage notes because of Robert's failure to make payments on the second mortgage note, this Court should enter judgment in her favor and find nondischargeable these additional insurance premiums. However, Sherri does not provide legal authority to support her contention that she is entitled to this judgment against Robert. This Court abstains from determination of this claim. The parties are at liberty to seek determination of this alleged debt in a court of competent jurisdiction. Once the state court makes a determination of liability,

that court may then exercise its concurrent jurisdiction to determine the dischargeability of the obligation under § 523(a)(5).[35] To the extent required to initiate and conclude necessary proceedings on this claim in state court, the automatic stay is modified.

*Sherri's Attorney's Fees*

▮ Sherri seeks attorney's fees of $3,515.50 associated with her prosecution of this action. Robert alleges that Sherri did not comply with the notice requirement set out in the ̆Agreement which serves as a prerequisite to the award of attorney's fees. Robert also argues that Sherri's attorney's fees incurred with regard to his bankruptcy and the filing of this complaint are not on account of an "action brought for enforcement, breach or clarification of the Agreement."

▮ This Court does not have jurisdiction to determine the amount of attorney's fees allowed to a party attendant to filing a complaint seeking a dischargeability finding under § 523(a)(5). This Court may not award support; the only role of this Court is to determine the dischargeability of obligations between the parties. It is incumbent upon the state courts to determine whether Sherri is entitled to attorney's fees related to her prosecution of this adversary proceeding. Section 523(a)(5) requires that this Court determine nothing more than the dischargeability of Robert's obligations to Sherri.[36] Sherri's entitlement to attorney's fees and costs "is a matter of state law since no provision of the Bankruptcy Code provides for them, and bankruptcy courts have declined to rule on such requests."[37] Section

---

**35.** *Matter of Marriage of Sailsbury,* 13 Kan. App.2d 740, 779 P.2d 878 (1989).

**36.** *See In re Shearer,* 124 B.R. 862 (Bankr. N.D.Fla.1990).

**37.** COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.05[1] at 6–58 (Margaret D. McGarrity, et al., eds., 2002 Supp.). The analysis in COLLIER seems appropriate because of the understandable proclivity of the federal courts to generally defer to state courts in family law matters

 

523(a)(5) does not contain a provision for the allowance of attorney's fees, and "precedent also exists for such fees being awarded by a state court."[38]

Although Sherri's attorney's fees were incurred after the filing of Robert's bankruptcy petition, the predicate for the allowance of fees arises from the prepetition Agreement. The state court may determine whether Sherri is entitled to attorney's fees and costs under the Agreement and applicable Missouri law; once this determination is made, the state court may exercise its concurrent jurisdiction to determine whether Robert's obligation is in the nature of support and nondischargeable under § 523(a)(5). To the extent required to initiate and conclude necessary proceedings on this claim in state court, the automatic stay is modified.

*Miscellaneous Obligations*

 Robert concedes that his obligation to pay his share of the children's medical expenses is nondischargeable, and that is the judgment of this Court. Additionally, this Court finds that Robert's obligations to pay his portion of the children's extracurricular expenses, to pay his portion of the education expenses of his children, including college expenses and, of course, to make ongoing child support payments, are nondischargeable. Sherri does not provide sufficient information in her brief to allow this Court to determine the status of the $440.00 insurance payment. This Court abstains from entering judgment in this amount and determining dischargeability of the alleged debt and defers to the state court of Missouri on this issue.

*Conclusion*

Robert's obligation under the Agreement to make payments on the second

mortgage note is not dischargeable under § 523(a)(5), and Sherri is granted a nondischargeable judgment in the amount of $30,407.57, plus the applicable judgment rate of interest under the laws of the State of Missouri. Robert's obligations under the Agreement to pay the medical and extracurricular expenses of his children, ongoing child support payments, and expenses associated with the education of his children, including his obligation to provide assistance for college expenses and fees, are nondischargeable under § 523(a)(5). This Court abstains from and defers to the state courts of the State of Missouri to determine whether Sherri is entitled to a nondischargeable judgment of $440.00 for insurance premiums, MIP premiums in the amount of $101.50 per month, and her attorney's fees and costs incurred in her prosecution of this adversary proceeding.

IT IS SO ORDERED.

---

and the greater expertise and knowledge that state courts hold with regard to family law matters.

