**In re Margaret Fay CARLIN, Debtor.**

**Margaret Fay Carlin, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 02–22890.**
**Adversary No. 02–6101.**

United States Bankruptcy Court,
D. Kansas.

Dec. 20, 2004.

558

William D. Peters, Kansas City, KS, for Debtor.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

ROBERT D. BERGER, Bankruptcy Judge.

Margaret Fay Carlin (hereinafter referred to as "Margaret") filed her individual Chapter 7 bankruptcy petition on August 14, 2002. Her husband, Jeffrey J. Carlin (hereinafter referred to as "Jeffrey"), did not file bankruptcy. Margaret filed a complaint to determine the dischargeability of her federal income tax liabilities for the years 1999, 2000 and 2001 as the instant action. This matter comes before the Court on cross-motions for summary judgment to determine whether Margaret's tax debt to the Internal Revenue Service ("IRS"), arising from federal income tax returns filed for 1999, 2000, and 2001,[2] is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(A) or (B).[3] Al-

---

1. The plaintiff, Margaret Fay Carlin, appears by counsel William D. Peters of Kansas City, Kansas. The defendant, Internal Revenue Service, appears by Phyllis Jo Gervasio of the United States Dept. of Justice, Tax Division, Washington, D.C.

2. The parties have stipulated that Margaret's 1997 tax liability is dischargeable and that her 1998 tax liability is not.

3. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless otherwise specified.

ternatively, Margaret contends that even if her tax debt is excepted from discharge under §§ 523(a)(1)(A) or (B), the Court should employ equitable powers under § 105(a) to discharge her tax debt.

The Court denies Margaret's motion for summary judgment (Doc. No. 14), grants the IRS's motion for summary judgment (Doc. No. 17), and holds that the principal and interest on Margaret's federal income tax liabilities associated with the 1999, 2000, and 2001 joint tax returns filed with Jeffrey are priority unsecured claims and not dischargeable under § 523(a)(1). The associated penalties are not dischargeable under § 523(a)(7).

### Factual Background

The relevant facts are not in dispute:

1) For the years 1999, 2000, and 2001, Margaret filed joint federal income tax returns ("Married Filing Jointly") with her husband, Jeffrey.

2) For the years 1999, 2000, and 2001, Margaret's federal income tax returns, as submitted for the Court's review, are true and accurate copies of the joint returns filed by Margaret and Jeffrey.

3) For the year 1999, Margaret did not have income and, based on her lack of income, was not required under the Internal Revenue Code to file a federal income tax return.

4) For the years 2000 and 2001, Margaret earned less income than the respective individual exemption amount for each year and, based on her income, was not required under the Internal Revenue Code to file a federal income tax return.

5) For the years 1999 and 2001, Margaret and Jeffrey itemized their de-

ductions on their federal income tax returns and used the standard deduction for the year 2000.

6) Jeffrey was individually eligible to claim all of the deductions and credits reflected on the joint 1999, 2000, and 2001 joint federal income tax returns, except for the earned income tax credit for the year 2000 and a personal exemption for Margaret for the years 2000 and 2001.

7) An order of discharge in Margaret's individual Chapter 7 case was entered on February 13, 2003.

8) The pertinent tax returns were filed and taxes were assessed as follows:[4]

**1999**

| | |
|---|---|
| Due Date of Tax Return: | October 15, 2000 |
| Tax Return Filed and Tax Assessed: | March 18, 2002 |
| Margaret's Bankruptcy Case Filed: | August 14, 2002 |
| | |
| Principal as of 11/01/02: | $8,983.21 |
| Interest as of 11/01/02: | 219.70 |
| Penalty as of 11/01/02: | 105.82 |

**2000**

| | |
|---|---|
| Due Date of Tax Return: | October 15, 2001 |
| Tax Return Filed and Tax Assessed: | March 25, 2002 |
| Margaret's Bankruptcy Case Filed: | August 14, 2002 |
| | |
| Principal as of 11/01/02: | $2,536.65 |
| Interest as of 11/01/02: | 74.02 |
| Penalty as of 11/01/02: | 26.61 |

**2001**

| | |
|---|---|
| Due Date of Return: | April 15, 2002 |
| Tax Return Filed and Tax Assessed: | May 27, 2002 |
| Margaret's Bankruptcy Case Filed: | August 14, 2002 |
| | |
| Principal as of 11/01/02: | $4,506.01 |
| Interest as of 11/01/02: | 110.20 |
| Penalty as of 11/01/02: | 22.15 |

For the years 1999, 2000 and 2001, all of the returns were due within three years of the bankruptcy filing date and were filed within two years of the bankruptcy filing date; all of the liabilities associated with those returns were assessed within 240 days of the bankruptcy filing date.

(Doc. # 15).

---

4. See Exhibit D to Suggestions in Support of Debtor's Motion for Summary Judgment

### Discussion and Conclusions

Summary judgment is appropriate if a moving party demonstrates that there is "no genuine issue of material fact" and that it is "entitled to a judgment as a matter of law." [5] The substantive law identifies which facts are material.[6] A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant.[7] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." [8] This Court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor.[9] Essentially, this Court performs the threshold inquiry of determining whether a trial is necessary.[10] Here, where the relevant facts are uncontroverted, the Court need only determine whether the IRS is entitled to judgment as a matter of law.

### Title 11 U.S.C. §§ 523(a)(1)(A) and (B) Exceptions to Discharge

■ Under the Bankruptcy Code, debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.[11] However, the Bankruptcy Code limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." [12] As a result of the fresh-start objectives of bankruptcy, exceptions to discharge are narrowly construed and doubt is resolved in the debtor's favor.[13]

■ The IRS argues that since Margaret is jointly and severally liable with Jeffrey for the taxes associated with the 1999, 2000, and 2001 returns, the tax obligations are not dischargeable. It is the Bankruptcy Code, however, that determines whether Margaret's income tax obligations are excepted from discharge. Whether Margaret is liable for the taxes is only the threshold inquiry; if Margaret's liability for the taxes is established, the ultimate question is whether Margaret's liability for the taxes is dischargeable under § 523(a)(1). Although establishment of liability and dischargeability would ordinarily necessitate separate analysis, it is clear that Margaret shares the tax liability on the joint returns with her husband.[14]

---

5. Fed. R. Bankr.P. 7056 and Fed.R.Civ.P. 56(c).

6. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

7. *Id.*

8. *Id.*

9. *Id.* at 249, 106 S.Ct. 2505.

10. *Id.* at 250, 106 S.Ct. 2505.

11. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

12. *Id.*

13. *See Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir.1997).

14. *See* 26 U.S.C. § 6013(d)(3); *see also* C. Richard McQueen & Jack F. Williams, Tax Aspects of Bankruptcy Law and Practice § 17:1 (3rd ed.2004) (quoting *Stevens v. C.I.R.,* 872 F.2d 1499 (11th Cir.1989) (citations omitted)) ("The price which the law extracts for this privilege [of paying a lower tax rate with a joint return] is that taxpayers who file a joint return are jointly and severally liable for the amount of tax due, regardless of the source of income reported and notwithstanding the fact that one spouse may be less informed about the contents of the return.").

Therefore, the Court need only proceed with its dischargeability analysis.

Section 523(a)(1) of the Bankruptcy Code determines which income taxes are not discharged in an individual's Chapter 7 bankruptcy. These nondischargeable income tax liabilities are:

**■ 1. Priority tax claims:** Section 523(a)(1)(A) excepts from discharge all priority tax claims set out in § 507(a)(8) and accordingly requires the determination of whether the taxes constitute priority tax claims. With reference to the principal and interest for income tax liabilities, § 507(a)(8) provides three independent bases for priority:

(a) Tax debts associated with *required* tax returns due within the three years prior to the date of the filing of the bankruptcy petition are entitled to priority. For purposes of this rule only, the dispositive date is the due date of the return, and the date the return was actually filed is immaterial ("Three–Year Rule").[15] Margaret's joint income tax returns for 1999, 2000, and 2001 were due within the three years prior to the date of the filing of Margaret's bankruptcy petition and thus the associated taxes are priority claims under § 507(a)(8)(A)(i).

(b) Tax debts assessed within 240 days (as extended during the period in which an offer in compromise was pending plus 30 days) before the date of the filing of the bankruptcy petition constitute priority tax claims ("240–Day Rule").[16] Margaret's joint tax returns for 1999, 2000, and 2001 were filed and the tax obligations were assessed within 240 days before the date Margaret filed her bankruptcy petition and thus the associated taxes are priority claims under § 507(a)(8)(A)(ii).

(c) If a tax is not assessed but remains assessable after a bankruptcy petition is filed, it is entitled to priority classification, unless the tax relates to either a non-filed tax return or a delinquent tax return filed within two years of the filing of the bankruptcy petition, or it relates to a fraudulent return ("Unassessed Tax Rule"). Since Margaret's tax liabilities were assessed pre-petition, § 507(a)(8)(A)(iii) does not apply because it only applies to taxes that are not assessed and remain assessable.

**■ 2. Unfiled or late filed return:** Section 523(a)(1)(B) excepts from discharge any tax for which a return was *required* and was not filed or for which a required return was filed within the two years prior to the date that the bankruptcy petition was filed ("Two–Year Rule").

**■ 3. Fraudulent return or tax evasion:** Section 523(a)(1)(C) excepts from discharge any tax attributable to a fraudulent return or for which the debtor willfully attempted in any manner to evade or defeat such tax.[17]

**■ 4. Punitive (non-pecuniary) tax penalties:** Section 523(a)(7) excepts from discharge certain non-pecuniary (*i.e.,*

---

15. *See* § 507(a)(8)(A)(i).

16. *See* § 507(a)(8)(A)(ii).

17. Although Margaret argues in her motion for summary judgment that 11 U.S.C. § 523(a)(1)(C) does not bar the Court from discharging her tax debts, § 523(a)(1)(C) is irrelevant to the Court's § 523(a)(1)(A) and (B) dischargeability determinations. The IRS has not claimed that Margaret made a fraudulent return or willfully attempted to evade or defeat such tax. Therefore, consideration of Margaret's § 523(a)(1)(C) argument is unnecessary.

punitive) tax penalties. However, those penalties that relate to a transaction or event that occurred more than three years prior to the filing of the bankruptcy petition are dischargeable even if the underlying taxes are not.[18]

■ Each of the income tax exceptions to discharge under § 523(a)(1) and the priority provisions in § 507(a)(8), as incorporated by reference, are applied alternatively; that is, they are not mutually exclusive.[19] "Merely because a particular liability is not encompassed by a particular exception to discharge does not provide it safe harbor from another exception which squarely applies."[20] Therefore, the Court must address each exception from discharge.

■ In the case at bar, Margaret argues that her tax obligations are dischargeable because they neither fall under the priority provisions of the Three–Year Rule set out in § 507(a)(8)(A)(i) nor the Two–Year Rule set out in § 523(a)(B) because Margaret was not "required" under the Internal Revenue Code to file income tax returns for the years 1999, 2000, or 2001.[21] However, this contention is not pertinent to the 240–Day Rule because a "required" return is not an element in that subsection. Accordingly, even if Margaret were to prevail in her argument that she is not "required" to file income tax returns as contemplated under the Three–Year Rule

and the Two–Year Rule, her liability for the taxes is still not dischargeable under the 240–Day Rule (as incorporated by § 523(a)(1)). However, since Margaret raises the "required" return issue in her pleadings, the Court will address the merits of her arguments to determine whether her tax liabilities are also not dischargeable under the Three–Year Rule and the Two–Year Rule.

■ As with income taxes for which returns are due within the three years prior to the date of the filing of the bankruptcy petition, tax returns filed late and within the two years prior to the date of the bankruptcy petition must be "required" tax returns if the resulting tax obligations are to be excepted from discharge.[22] Therefore, the common and remaining element left for determination of dischargeability under the Three–Year Rule and the Two–Year Rule is whether Margaret was *required* to file federal income tax returns for the years 1999, 2000, and 2001 as contemplated in §§ 507(a)(8)(A)(i) and 523(a)(1)(B).

### "Required" Tax Returns

In statutory interpretations, courts must look to the plain language of a statute and give effect to its meaning.[23] "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."[24] If the

---

**18.** *See, e.g., McKay v. United States,* 957 F.2d 689 (9th Cir.1992).

**19.** *See In re Coleman Am. Moving Serv., Inc.,* 20 B.R. 267 (Bankr.D.Kan.1981).

**20.** *See In re Etheridge,* 91 B.R. 842 (Bankr. C.D.Ill.1988).

**21.** *See* § 507(a)(8)(A)(i).

**22.** *See* § 523(a)(1)(B).

**23.** *Schusterman v. United States,* 63 F.3d 986, 989 (10th Cir.1995) (citing *United States v.*

*Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Johns v. Stewart,* 57 F.3d 1544, 1555–56 (10th Cir. 1995)).

**24.** *Id.* (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980))).

statute is clear, that is the end of the inquiry.[25] Under § 523(a)(1)(B)[26] and § 507(a)(8)(A)(i),[27] the provisions relevant to the Two–Year Rule and the Three–Year Rule, it is clear from the plain language of the Code that a return must be *required* before a tax debt is excepted from discharge under these provisions. However, before the Court may proceed with its analysis, it is necessary to determine when a tax return is "required" under the Code.

The Bankruptcy Code does not define the term "required" as used in §§ 507(a)(8) and 523(a)(1). Since the parties have not cited to this Court, and this Court is unable to find by its own research, any case law that interprets the term, this Court must craft a definition without the benefit of landmarks established by prior case law. The plain or ordinary meaning of "required" as defined by the *American Heritage Dictionary of the English Language* is "essential" or "obligatory."[28] Similarly, *Webster's New World Dictionary* defines "required" as "to be in need of, need" or "to call for as necessary or appropriate."[29] Therefore,

based on the plain meaning of "required," a resulting tax debt is not discharged if filing a tax return is essential, obligatory, needed, or necessary.

Margaret asserts that her tax obligations on the federal tax returns are dischargeable since she was not required to file an income tax return under the Internal Revenue Code.[30] The Internal Revenue Code only requires income tax returns for individuals "having for the taxable year gross income which equals or exceeds the exemption amount," with certain other inapplicable exceptions.[31] The Court agrees that Margaret's income for each of the three years in question was less than the exemption amount and that by virtue of her income, she was not required under the Internal Revenue Code to file an income tax return.

Although it is clear that § 523(a)(1) should be interpreted narrowly, this exception to discharge incorporates by reference the priority claim scheme under § 507(a)(8), a section of the Bankruptcy Code whose application is frequently unrelated to the issue of dischargeability. For

---

**25.** *Id.* (citing *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir.1991), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991)).

**26.** **11 U.S.C. § 523. Exceptions to Discharge**

(A) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . . .

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition. . . .

**27.** **11 U.S.C. § 507. Priorities**

(a) The following expenses and claims have priority in the following order:

. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition. . . .

**28.** THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 711 (4th ed.2000).

**29.** WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1208 (2d ed.1976).

**30.** 26 U.S.C. § 6012.

**31.** *See* 26 U.S.C. § 6012(a)(1)(A).

instance, § 507 generally determines the order in which allowed unsecured claims receive distributions from the estate in a Chapter 7 bankruptcy and what unsecured claims are provided full payment under a Chapter 13 bankruptcy plan. Although § 523(a)(1) should be construed narrowly and in the debtor's favor, § 507 does not necessarily carry this imperative.

■■■ The debtor's intriguing argument is that since she was not required under the Internal Revenue Code to file the returns because her gross income for each of the years was insufficient, the returns are not "required" so as to render the associated liabilities outside the purview of the Three–Year Rule and Two–Year Rule. However, it is this Court's opinion that interpretation of "required" as contemplated in §§ 507(a)(8)(A)(i) and 523(a)(1)(B) leads to a different conclusion. The term "required" in these subsections refers to whether a specific type of tax requires the filing of an income tax return. Since federal income tax liabilities require the filing of a tax return with the Internal Revenue Service, an income tax return is "required." Although Margaret was not compelled to file an income tax return under the Internal Revenue Code based on her income, she elected to file a joint income tax return with her husband on account of a type of tax that requires the filing of a tax return. In order to file a joint return with her husband, Margaret was required to file a tax return with the IRS.

Although legislative history provides little additional insight, in 1978, a proposed version of § 507 contemplated tax liabilities for which returns were not required:

> Also included are certain taxes for which no return or report is required by law (§ 507(a)(6)(C)) [now § 507(a)(8)], if the taxable transaction occurred within

three years before the petition was filed.[32]

In the final version of § 507, however, the provision was changed so that only income taxes for which a return is required are entitled to priority status under the Three–Year Rule. The legislative history does not explain why the above provision was deleted from the final legislation.

Based on this scant legislative history, it appears that Congress focused not on whether a particular individual is required to file a return under the Internal Revenue Code, but on whether a particular type of tax required the filing of a return. Otherwise, it would have been unnecessary for Congress to consider tax priority subsections that separately address taxes for which a return was required and taxes for which a return was not required. This interpretation is logical when applied within the broader scope of § 507(a)(8). The condition that the return is "required" is only listed under the Three–Year Rule and the Two–Year Rule, but not the other two subsections that create priority income tax liabilities. If this Court adopted Margaret's interpretation of § 507(a)(8), then, for instance, the 240–Day Rule could result in the classification of an income tax liability as priority even if Margaret were not required to file an income tax return under the Internal Revenue Code, but the liability would never be entitled to priority classification under the Three–Year Rule. This is a nonsensical result that would disharmoniously contort § 507(a)(8). A more rational reading is to focus on the type of tax since this interpretation is in concert with a plain reading of the statute. This Court has previously found in the context of § 523(a)(5) that the same term used in the Internal Revenue Code and the Bankrupt-

**32.** S. Rep. 95–989, at 71 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5857.

cy Code may entail differing legal effects and conclusions.[33]

■ Margaret urges a different result based upon *In re Jackson*.[34] In *Jackson*, the court found that although the debtors' federal income tax liability was adjusted by the IRS, they did not file a report with the California Franchise Tax Board as required under state law. In *Jackson*, the court concluded that the terms "report" and "return" were not the same and, hence, the state income tax liability was discharged because what the debtors had failed to file was not a return, but a report. The *Jackson* court did not equate the requirement to file a report regarding a federal tax change as equivalent to the requirement to file an amended return.[35] While not exactly on point, this case may actually support the notion that this Court should focus on whether a particular type of tax requires the filing of a tax return. California law did not require a return for additional state income tax that arose from a tax adjustment to the federal return. It was the type of tax (*i.e.*, an additional assessment) and not the status of the debtors that drove the court's conclusion. The court observed that "[t]he legislative history of § 523(a)(1)(B)(i) also establishes that the word 'return' means a tax return required by taxing authorities for taxpayers to set forth their tax liabilities."[36] When Margaret elected to file a joint tax return with her husband, she became jointly and severally liable with him for any income tax liabilities associated with that return. By making this election, Margaret filed tax returns for a type of income tax that requires the filing of a tax return. The tax liabilities in question are entitled to priority classification pursuant to § 507(a)(8)(A)(i) and, hence, are not dischargeable as priority tax claims pursuant to § 523(a)(1)(A). Additionally, since the tax returns were filed within two years prior to the date of the filing of Margaret's bankruptcy, the liabilities are not dischargeable pursuant to § 523(a)(1)(B)(ii) as late-filed returns.

■ Another possible interpretation of "required" is that when the joint filing of an income tax return imparts a benefit by reducing the income tax liability, then the income tax return is "required" to gain this advantage under the Internal Revenue Code. The IRS argues that the joint return reduced the tax liability as compared to a separate return filed by Jeffrey. For instance, by filing separately from Margaret, Jeffrey would lose the benefit of a personal exemption for Margaret if she had earned income for that year. Margaret argues that despite these adjustments, the ultimate tax liability would not have changed. However, whether a joint return generated a reduction of the tax liability or whether a joint return had no effect on the tax liability is not relevant and, hence, this factual dispute need not be resolved.

**33.** *See In re Trump*, 309 B.R. 585, 595 (Bankr. D.Kan.2004) (quoting and following COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.04[10] at 647–48 (Margaret D. McGarrity, et al., eds., 2002 Supp.) wherein it is observed that it may not be "necessarily inconsistent to take different positions on whether payments are alimony under two different statutes with different definitions of alimony and different purposes.").

**34.** 220 B.R. 683 (C.D.Cal.1998).

**35.** Although not mentioned in *Jackson*, proposed versions of § 507(a)(6) (now § 507(a)(8)) in the 1978 Act referred to tax claims arising from either a return or a report, the latter of which was deleted from the final version of the legislation. Appendix C to COLLIER ON BANKRUPTCY at App. Pt. 4–1785 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2004).

**36.** *Jackson*, 220 B.R. at 687.

### Income Tax Penalties

 Since the tax returns filed by Margaret for the years 1999, 2000, and 2001 were due less than three years prior to the filing of her bankruptcy petition, these penalties likewise are not dischargeable.[37]

### Title 11 U.S.C. § 105(a) Equitable Powers

 The Court has considered and rejects Margaret's request that the Court utilize § 105(a) as alternative authority to discharge Margaret's tax obligations. Under § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.[38] However, in the Tenth Circuit, a court's equitable powers under § 105(a) "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code."[39]

All of the cases cited by Margaret that allowed a partial discharge of a debt arose from student loans under § 523(a)(8). The Court does not find these cases persuasive since the test to discharge a student loan under § 523(a)(8) is whether excepting the debt from discharge will impose an undue hardship on the debtor and the debtor's dependents. Some courts interpret this language to allow the discharge of that portion of student loans that would impose an undue hardship in the event it were excepted from discharge. In contrast, the classification of tax claims as priority under § 507(a)(8) and nondischargeable under § 523(a)(1) is driven by time deadlines.

Either the tax claims fall within the deadlines or they do not; there is not any room in the plain reading of these provisions to deviate from this timeline analysis. Margaret does not cite to this Court any decisions that allowed the equitable discharge of tax debts which were not otherwise dischargeable, and this Court was unable to find any. Margaret does argue that since it is proper to toll tax claim priority and discharge deadlines,[40] this Court may also employ its equitable powers to essentially reduce the waiting periods necessary to discharge federal income liabilities. However, it is one matter to equitably toll the deadline for the period in which the debtor was previously in bankruptcy. It is a completely different matter to reduce or ignore the deadlines and to discharge what are otherwise nondischargeable tax obligations. Therefore, since Margaret's tax obligations are excepted from discharge, § 105(a) does not grant this Court authority to determine otherwise.

### *Conclusion*

The debtor's tax liabilities on account of the joint federal income tax returns she filed with her husband for the years 1999, 2000 and 2001 are not dischargeable pursuant to § 523(a)(1)(A) and (B). The debtor's obligations constitute priority tax claims under § 507(a)(8)(A)(ii) because these tax liabilities were assessed within 240 days of the date that the debtor filed her bankruptcy petition. Additionally, the liabilities are priority claims under § 507(a)(8)(A)(i) because the associated returns were due less than three years prior to the date the debtor's bankruptcy peti-

---

37. *See* § 523(a)(7).

38. 11 U.S.C. § 105(a).

39. *In re Richards,* 994 F.2d 763, 765 (10th Cir.1993).

40. *See Young v. United States,* 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002), wherein the court held that the tax priority and discharge deadlines were equitably tolled for that period during which the debtor was previously in bankruptcy proceedings and was liable for the taxes.

tion was filed. These priority tax claims are not dischargeable under § 523(a)(1)(A). Since the debtor filed the joint income tax returns less than two years prior to the filing of her bankruptcy petition, the tax liabilities are also not dischargeable under § 523(a)(1)(B)(ii). The associated tax penalties are not dischargeable under § 523(a)(7).