Juana P. MAALI, a/k/a Juana
P. Mercado, Debtor.

Juana P. Maali, Plaintiff–Appellant,

v.

United States of America,
Defendant–Appellee.

BAP No. MW 10–013.
Bankruptcy No. 07–43678–MSH.
Adversary No. 09–04075–MSH.

United States Bankruptcy Appellate Panel
of the First Circuit.

July 16, 2010.

Juana P. Maali, Pro Se, on brief for Plaintiff–Appellant.

Austin L. Furman, Esq., on brief for Defendant–Appellee.

Before HAINES, LAMOUTTE, and TESTER, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Juana Maali appeals pro se from the bankruptcy court's order (the "Order") granting summary judgment in favor of the United States of America, on behalf of its agency, the Internal Revenue Service ("IRS"). Ms. Maali had filed a complaint seeking to discharge certain tax obligations. She argues that the bankruptcy court erred for two reasons: (1) the taxes at issue are not of the type set forth in

§ 507(a)(8)[1] because they were assessed more than 240 days prior to her bankruptcy filing and, therefore, they do not fall within the exception to discharge set forth in § 523(a)(1)(A); and (2) the bankruptcy court did not consider that repayment of the taxes will create a hardship for Ms. Maali. For the reasons set forth below, we AFFIRM.

## BACKGROUND

Ms. Maali filed a chapter 13 petition on October 4, 2007, and the case was converted to chapter 7 on January 12, 2009.

On December 19, 2007, the IRS filed a proof of claim, which included: (1) $2,347.63, plus prepetition interest in the amount of $635.21, for a tax assessment against Ms. Maali for the 2002 income tax year; and (2) $2,513.00, plus prepetition interest in the amount of $602.06, for a tax assessment against her for the 2003 income tax year. The assessments for both income tax years included reversals of the earned income credit, additional tax, and statutory interest; the assessment for 2002 included a reversal of a refund of interest. The amounts of the assessments, exclusive of assessed statutory interest, were based upon the amounts included in an agreed decision entered by the U.S. Tax Court in May 2007, in which Ms. Maali and her husband agreed to liability for the recapture of disallowed earned income tax credits and child tax credits for the income tax years 2002 and 2003.[2] As noted in the IRS' proof of claim, the assessments for tax years 2002 and 2003 were made against the Maalis on August 20, 2007, and August 6, 2007, respectively.

In her complaint, Ms. Maali sought a discharge of her tax obligations for the 2002 and 2003 income tax years. She alleged that she disputed the accuracy of the alleged taxes and that payment of the disputed taxes would cause hardship. The IRS moved for summary judgment arguing that because it made assessments against Ms. Maali within 240 days before the filing of her bankruptcy petition, the tax obligations were of the type included in § 507(a)(8)(A) and, therefore, were nondischargeable pursuant to § 523(a)(1)(A). The bankruptcy court granted the IRS' motion. This appeal ensued.

## JURISDICTION

Before addressing the merits of an appeal, we must determine our jurisdiction, even if the issue is not raised by the litigants. See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724, 725–26 (1st Cir. BAP 1998). We have jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections or chapter numbers shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, et seq.

2. Apparently, Ms. Maali filed tax returns for the years 2002 and 2003. Bank of America erroneously reported the amount of a refinance check received by Ms. Maali, which triggered an audit. The audit resulted in a subsequent assessment of additional liability, which Ms. Maali challenged in U.S. Tax Court. The Tax Court proceeding resulted in a settlement wherein Ms. Maali agreed to certain tax liabilities for the income tax years 2002 and 2003.

judgment," *In re Bank of New England*, 218 B.R. at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy court's order granting summary judgment is a final order. *See Segarra Miranda v. Garrido Pagan (In re Garrido Jimenez)*, 370 B.R. 878, 880 (1st Cir. BAP 2007) (citations omitted).

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). A bankruptcy court's order granting summary judgment is reviewed *de novo*. *See Backlund v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11, 17 (1st Cir. BAP 2009); *In re Garrido Jimenez*, 370 B.R. at 880 (citing *Guzman–Rosario v. United Parcel Serv., Inc.*, 397 F.3d 6, 9 (1st Cir. 2005); *Canzano v. Ragosa (In re Colarusso)*, 382 F.3d 51, 57–58 (1st Cir.2004)).

## DISCUSSION

### I. The Summary Judgment Standard

A motion for summary judgment in a dischargeability action is governed by the same standards applicable to motions under Fed.R.Civ.P. 56. *See* Fed. R. Bankr.P. 7056. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden of demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66 (1st Cir.2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "If the initial burden is met, the burden shifts to the non-moving party [ ] to show that genuine issues of material fact exist." *In re Schifano*, 378 F.3d at 66 (citing *Fed. Deposit Ins. Corp. v. Ponce*, 904 F.2d 740, 742 (1st Cir.1990)). "The non-moving party must set forth more than conclusory allegations, improbable inferences or unsupported speculation to establish genuine issues of material fact. Competent evidence is required." *Id.* (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Although the court must view the record in the light most favorable to the non-moving party, "as to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 31 (1st Cir.2001) (quotations and citations omitted).

### II. Nondischargeability of Tax Debts Under § 523(a)(1)(A)

 Section 523(a)(1)(A) excepts certain individual debts from discharge, including any tax "of the kind and for the periods specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). Section 507(a), in turn, describes the priority of certain claims in the distribution of the debtor's assets. Sub-

352

section 507(a)(8)(A)(ii) gives eighth priority to "allowed unsecured claims of governmental units, only to the extent that such claims are for ... a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition ... assessed within 240 days before the date of the filing of the petition...." 11 U.S.C. § 507(a)(8)(A)(ii). Thus, if the IRS has a claim for taxes · assessed during the 240–day period preceding the bankruptcy filing, the claim enjoys eighth priority and is nondischargeable. If a prepetition tax obligation is excepted from discharge, the accrued prepetition interest owed on the unpaid tax obligation is also nondischargeable. *See Hardee v. Internal Revenue Serv. (In re Hardee)*, 137 F.3d 337, 342 (5th Cir.1998).

The bankruptcy court determined that the disputed income tax liabilities for the years 2002 and 2003 were for "a taxable year ending on or before the date of the filing" (as set forth in § 507(a)(8)(A)) and that the assessments made on August 6, 2007, and August 20, 2007, were made within the 240–day period before the petition date. As the disputed taxes fell within the scope of § 507(a)(8)(A)(ii), the bankruptcy court concluded that they were nondischargeable under § 523(a)(1)(A).

Ms. Maali argues that the bankruptcy court erred because: (1) the disputed taxes do not fall within § 507(a)(8) because they were assessed during the year 2005 (when the audit was conducted), or at least that they were assessed outside of the 240–day period preceding her bankruptcy filing; and (2) the bankruptcy court did not consider whether payment of the tax debts would create a hardship for her and her family.

**A. When were the IRS assessments made?**

██ "The 'assessment[ ]' [of a tax is] essentially a bookkeeping notation, [and] is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976) (citing 26 U.S.C. § 6203). Income taxes must normally be assessed within three years after the return is filed. *See* 26 U.S.C. § 6501(a). When the IRS determines a tax deficiency, as in this case, it may not assess the deficiency before sending the taxpayer a notice of deficiency. 26 U.S.C. § 6213(a); *see also* 26 U.S.C. § 6212(a) (authorizing the Secretary of the Treasury, after determining that there is a deficiency, to send a notice of deficiency to the taxpayer by mail). Within 90 days after the IRS mails a taxpayer a notice of deficiency, "the taxpayer may file a petition with the Tax Court for redetermination of the deficiency." 26 U.S.C. § 6213(a). "[N]o assessment of a deficiency ... shall be made ... until the expiration of such 90–day [ ] period ... nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final." *Id.* Thus, the mailing of a notice of deficiency tolls the running of the three-year limitations period in 26 U.S.C. § 6501 "for the period during which the Secretary is prohibited from making the assessment ... and for 60 days thereafter." 26 U.S.C. § 6503(a)(1); *see Payne v. Comm'r,* 224 F.3d 415, 416 (5th Cir.2000) (stating that a notice of deficiency is "an event that tolls the statute of limitations pending assessment"); *Kindred v. Comm'r,* 454 F.3d 688, 690 n. 4 (7th Cir.2006).

██ Ms. Maali's 2002 and 2003 federal income tax returns were deemed filed on April 15, 2003, and April 15, 2004, respectively. *See* 26 U.S.C. § 6501(b). Therefore, the IRS initially had until April 15, 2006, and April 15, 2007, respectively, to assess additional taxes for those tax years. *See* 26 U.S.C. § 6501(a). The IRS appar-

ently issued a Notice of Deficiency in 2005 (although the record does not contain a copy of that notice). Ms. Maali challenged that notice by filing a petition in the U.S. Tax Court. As a result, the IRS was prohibited from making any assessment until the U.S. Tax Court issued a decision and that decision became final. *See* 26 U.S.C. § 6503(a)(1).

■■ The Tax Court entered an agreed decision on May 4, 2007, establishing Ms. Maali's liability on the disputed taxes. She did not appeal that decision; therefore, it became final 90 days thereafter, on August 2, 2007. *See* 26 U.S.C. § 7481(b). The IRS made its assessments on August 6, 2007, and August 20, 2007, which was within the 240–period preceding the October 4, 2007 bankruptcy filing.[3] There is no record evidence effectively disputing the IRS assessment date.[4]

The bankruptcy court properly concluded that the IRS made assessments against

Ms. Maali on August 6, 2007, and August 20, 2007. Thus, those tax obligations were of the type included in § 507(a)(8)(A) and, therefore, were nondischargeable pursuant to § 523(a)(1)(A).

## B. Hardship

■■ Ms. Maali also argues that the bankruptcy court should have considered that payment of the subject taxes would create a hardship for her and her family. The bankruptcy court, however, had no authority to consider hardship as a basis to discharge her tax obligations.[5]

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the Order.

---

3. *See* "Certificate of Assessments, Payments and Other Specified Matters (IRS Form 4340)." Such certificates are "routinely used to prove that tax assessment has in fact been made" on a specific date. *See Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.1992) (citations omitted). They are "presumptive proof of a valid assessment." *Id.*

4. Indeed, Mr. Maali's stated position before the bankruptcy court actually supported the IRS' position:

> The Court: Well, they say it [the assessment] was August 20th, 2007, and August 6th, 2007, and their paperwork seems to support that that was attached to their motion.
> Mr. Maali: Yes, sir, and respectfully I have a copy of the auditor, Steven Foster, from—
> The Court: That's the audit. I'm talking about—
> Mr. Maali: Yes, Your Honor.
> The Court: —the assessment that took place after the Tax Court—as a result of the Tax Court proceeding.
> Mr. Maali: Yes, Your Honor. That's— you're absolutely correct.

> The Court: Was that in August of 2007.
> Mr. Maali: Yes, Your Honor. You're absolutely correct.

5. Under § 105(a), "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). As the bankruptcy court recognized, a court's equitable powers under § 105(a) may not be exercised in a manner that is "outside the confines of the Bankruptcy Code." Although the test to determine the dischargeability of a student loan under § 523(a)(8) is whether excepting the debt from discharge will impose an "undue hardship" on the debtor and her dependents, there is no statutory "hardship" test for determining whether certain tax liabilities are excepted from discharge under § 523(a)(1). "[T]he classification of tax claims as priority under § 507(a)(8) and nondischargeable under § 523(a)(1) is driven by time deadlines. Either the tax claims fall within the deadlines or they do not; there is not any room in the plain reading of these provisions to deviate from this timeline analysis." *Carlin v. United States (In re Carlin)*, 318 B.R. 556, 566 (Bankr.D.Kan.2004).