In re Jay BUSCH, Debtor.

Jay Busch, Defendant–Appellant,

v.

Cindy A. Hancock, formerly known as Cindy A. Busch, Plaintiff–Appellee.

BAP No. UT–06–072.

Bankruptcy Nos. 02T–27006, 05T–20724.

Adversary No. 04P–2943WTT.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 4, 2007.

---

Scott B. Mitchell, Salt Lake City, UT, for Defendant–Appellant.

Steven C. Tycksen (Chad C. Shattuck with him on the brief) of Zoll & Tycksen, Murray, UT, for Plaintiff–Appellee.

Before CORNISH, NUGENT, and BERGER [1], Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

In this Chapter 7 bankruptcy case, defendant-debtor Jay Busch ("Debtor") appeals an order of the United States Bankruptcy Court for the District of Utah denying in part his motion for relief from judgment under Federal Rules of Bankruptcy Procedure 7052 and 9024. The main underlying issue in this adversary proceeding brought by Cindy Busch Hancock, Debtor's former wife ("Ex–Wife"), is the bankruptcy court's ruling that an obligation imposed by the parties' divorce decree on Debtor to pay a second mortgage on the couple's marital residence was in the nature of support until the parties' child reached age 18, and therefore, nondischargeable. A secondary issue is the bankruptcy court's award of attorney's fees to Ex–Wife's attorney incurred in connection with both state and federal litigation. For the following reasons, 1) we affirm the bankruptcy court's finding that the second mortgage payments are nondischargeable support; 2) we affirm the bankruptcy court's award of attorney's fees incurred in connection with Ex–Wife's litigation in bankruptcy court; but 3) we reverse the bankruptcy court's award of attorney's fees incurred in state court litigation because they were not reduced to judgment in state court.

## I. FACTUAL BACKGROUND

The history of this case is protracted and ugly. To say that this seemingly end-

**1.** Honorable Robert D. Berger, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Kansas, sitting by designation.

less litigation has been contentious would be an understatement. It began in 1998 when the parties were still married and received a discharge of debts in a joint Chapter 7 case. Sometime thereafter, the parties separated and then reconciled. During the separation, Debtor incurred debts that the parties, after reconciling, paid by taking out a second mortgage on the marital residence. The parties then divorced in January, 2000. Among other things, the parties' divorce decree orders Debtor to: 1) pay child support in an amount pursuant to the Utah Uniform Child Support Guidelines; 2) maintain health insurance on the minor child; 3) pay alimony; and *4) "assume and pay and hold [Ex–Wife] harmless from ... the second mortgage on the parties' home."* Decree of Divorce at ¶¶ 4, 6, 10 & 11, *in* Appellant's App. Vol. I at 20–22 (emphasis added). The second mortgage was a thirty year obligation. Debtor failed to make the second mortgage payments as directed by the divorce decree. As will become apparent, the non-payment of the second mortgage by Debtor has almost exhausted the resources of both the federal and state courts of Utah.

In July, 2000, Debtor filed his first Chapter 13 case. Ex–Wife filed a proof of claim for unsecured priority claims resulting from debts arising under the divorce decree. Judge Clark orally ruled that the second mortgage obligation was in the na-

ture of support and therefore nondischargeable under 11 U.S.C. § 523(a)(5).[2] Judge Clark also ruled that attorney's fees incurred by Ex–Wife in trying to enforce the divorce decree in state court were nondischargeable.[3] Unfortunately, Judge Clark's rulings were never reduced to a written order. Debtor then filed a motion in Utah state court to clarify the divorce decree regarding the character of the obligation to pay the second mortgage. The Utah state court determined that Judge Clark's ruling was res judicata as to this issue. Debtor voluntarily dismissed the first Chapter 13 case on July 2, 2001, and immediately filed his second Chapter 13 case on July 3, 2001. Debtor then appealed the Utah state court determination that Judge Clark's ruling was res judicata to the Utah Court of Appeals.

In the second Chapter 13 case, Judge Boulden ruled that Judge Clark's ruling in the first Chapter 13 case, that the second mortgage was in the nature of support, was res judicata as to the issue in the second Chapter 13 case. Judge Boulden also determined that some of Ex–Wife's attorney's fees in enforcing the divorce decree were nondischargeable.[4] Debtor voluntarily dismissed his second Chapter 13 case on April 16, 2002.

Debtor then filed his third Chapter 13 bankruptcy case on April 13, 2002. Ex–Wife again filed a proof of claim for unsecured priority claims from debts arising

---

**2.** Unless otherwise specified, all references are to sections of the Bankruptcy Code, Title 11 of the United States Code. Additionally, all references are to the Code prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPC-PA).

**3.** The attorney's fees were reduced to judgment in state court. Judge Clark allowed only those fees incurred prepetition because the state court litigation that continued post-petition was in violation of the automatic stay.

**4.** Although these fees related to an order to show cause dealing with child support and the collection of child support, based on a review of the record, it does not appear that these attorney fees were actually awarded by the state court. *See Transcript of March 15, 2002, Hearing on Objection to Claim # 7 Filed by Cindy Busch and Objection to Trustee's Motion to Dismiss and Motion to Abate* at 29–30, 89, *in* Appellee's App. at 227–28, 287.

under the divorce decree. The bankruptcy court entered an order lifting the automatic stay so that Ex–Wife could seek other remedies against Debtor in state court for failure to pay the second mortgage obligation.[5] Debtor appealed the bankruptcy court's order lifting the stay to the Tenth Circuit Bankruptcy Appellate Panel ("BAP").

On February 13, 2003, the bankruptcy court confirmed a Chapter 13 plan which provided for payment in full of Ex–Wife's priority claims, including the second mortgage obligation. In May, 2003, the Utah Court of Appeals reversed and remanded the state trial court's decision that Judge Clark's oral bankruptcy court ruling was res judicata in the state litigation to clarify the divorce decree. The appellate court determined that the oral ruling was insufficient for purposes of establishing res judicata. The BAP then affirmed the bankruptcy court's order lifting stay in June, 2003.

Upon remand by the Utah Court of Appeals of the litigation to clarify the divorce decree, the state trial court entered an order in June, 2004, concluding the payment of the second mortgage was an allocation of marital debt based on the principles of equitable distribution. On July 28, 2004, Debtor voluntarily converted his Chapter 13 case to a Chapter 7 case. Ex–Wife filed an adversary complaint objecting to discharge of debts pursuant to § 523(a)(5). The bankruptcy court subsequently denied Debtor's discharge as to debts because of the Debtor's previous discharge in the parties' joint 1998 Chapter 7 case.

■ On January 18, 2005, Debtor filed this Chapter 7 case, and Ex–Wife's adversary proceeding filed under the previous Chapter 7 case was deemed to be open and applicable to this case. On December 20, 2005, the bankruptcy court conducted a trial to determine whether the second mortgage obligation, and attorney's fees associated with litigation enforcing the same, were in the nature of nondischargeable support under § 523(a)(5). Debtor argued the obligation was in the nature of alimony, and such obligation terminated upon Ex–Wife's remarriage.[6]

The bankruptcy court determined the mortgage obligation was in the nature of support, and therefore nondischargeable, to the extent it allowed the parties' minor child to remain in the former marital home until age 18 (which occurred in August, 2004). *Memorandum Decision Granting in Part and Denying in Part Debtor's Motion for Relief from the Judgment Under Rules 7052 and 9024 ("Memorandum Decision")* at 9–10, *in* Appellant's App. Vol. I at 143–44. The bankruptcy court also determined that $7,000 in direct payments made by Debtor to Ex–Wife on the second mortgage obligation were to be applied to that portion of the obligation that was dischargeable.[7] *Memorandum Deci-*

---

**5.** The divorce decree awarded Debtor equity in the marital residence that became payable upon Ex–Wife's remarriage. Ex–Wife remarried on September 19, 2000. Ex–Wife was seeking to have Debtor's award of equity terminated based on his non-payment of the second mortgage obligation.

**6.** Pursuant to Utah Code Ann. § 30–3–5(9) (2005), alimony terminates upon remarriage unless otherwise specified by the divorce decree. The parties' divorce decree does not specify that alimony survives remarriage. It is not clear why Debtor did not argue that the obligation was in the nature of debt allocation as determined by the Utah state court.

**7.** The payments were intended to be made to the mortgage company but when Debtor failed to make them, Ex–Wife was forced to make them to avoid foreclosure. Therefore, Debtor made payments to Ex–Wife to reimburse for those payments.

*sion* at 6, *in* Appellant's App. Vol. I at 140. Additionally, the court awarded Ex–Wife attorney's fees and costs in connection with litigating the characterization of the second mortgage as support in state court; enforcing the second mortgage as nondischargeable in bankruptcy court; and the previous BAP appeal.

Debtor then requested relief from the bankruptcy court's judgment under Federal Rules of Bankruptcy Procedure 7052 and 9024. Debtor made four arguments for relief under Rule 7052: 1) Ex–Wife did not present evidence to support the court's determination that the second mortgage obligation was in the nature of nondischargeable child support; 2) the previous BAP appeal was unrelated to the nature of the second mortgage obligation, therefore Ex–Wife was not entitled to attorney's fees expended in connection therewith; 3) Debtor was clearly the prevailing party in state court litigation so the court should not have awarded any attorney's fees to Ex–Wife; and 4) the court did not properly credit certain payments Debtor previously made on the second mortgage obligation.

The bankruptcy court granted relief in part under Rule 7052 by determining the BAP appeal was unrelated to the nature of the second mortgage obligation and amended its decision to decrease the attorney's fees award to Ex–Wife by the amount of the BAP appeal fees. The bankruptcy court also revisited the amount Debtor had already paid on the second mortgage for proper credit. *Memorandum Decision* at 12, *in* Appellant's App. Vol. I at 146. Thus, only arguments one and three above remain viable on appeal.

Debtor also requested relief from the judgment under Rule 9024 based on the grounds of "surprise." Debtor sought to reopen the record to introduce a letter from his counsel to Ex–Wife that appears to instruct her on how the $7,000 in payments on the second mortgage obligation directly to her were to be allocated. The bankruptcy court denied Debtor any relief under Rule 9024. *Memorandum Decision* at 15–17, *in* Appellant's App. Vol. I at 149–51. Debtor now appeals.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. Neither party elected to have this appeal heard by the United States District Court for the District of Utah. The parties have therefore consented to appellate review by this Court.

█ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). In this case, the decision of the bankruptcy court terminated the adversary proceeding at issue. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.

## III. STANDARD OF REVIEW

The order being appealed was entered in response to Debtor's "Motion for Relief from the Judgment under Rules 7052 and 9024." Federal Rule of Bankruptcy Procedure 7052 makes Federal Rule of Civil Procedure 52 applicable to adversary proceedings. Rule 52(b) permits a judgment to be amended upon the motion of a party. Federal Rule of Bankruptcy Procedure 9024 makes Federal Rule of Civil Proce-

dure 60 applicable to bankruptcy cases. Rule 60(b), in part, allows a court to relieve a party from a judgment based on the grounds of mistake, inadvertence, surprise, or excusable neglect.

■■■■ The purpose of a Rule 52(b) motion is to "correct manifest errors of law or fact." *Lyons v. Jefferson Bank & Trust*, 793 F.Supp. 989, 991 (D.Colo.1992), *aff'd in part, rev'd in part on other grounds*, 994 F.2d 716 (10th Cir.1993). It is not to relitigate old issues or rehear the merits of a case. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986). Review of a lower court's order in response to a Rule 52(b) motion is for abuse of discretion. *Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 124–25 (1st Cir.1990); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed.Cir.2006). The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not spoken on this issue. However, a Rule 52(b) motion is similar in nature to a Rule 59(e) motion and the Tenth Circuit has stated that "[t]his court reviews the district court's ruling on a Rule 59(e) motion for abuse of discretion." *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1275 (10th Cir.2005) (citing *Minshall v. McGraw Hill Broad. Co., Inc.*, 323 F.3d 1273, 1287 (10th Cir.2003)).

■■■■ With respect to a Rule 60(b) motion, the Tenth Circuit has stated, "[w]e review ... the disposition of Rule 60(b) motions for an abuse of discretion. Under this standard, we will not reverse unless the trial court has made 'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" *Woodworker's Sup-*

*ply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 992 (10th Cir.1999) (quoting *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir.1994)) (alteration in original) (citations omitted).[8]

## IV. ANALYSIS

### A. The Bankruptcy Court Correctly Determined the Mortgage Obligation was in the Nature of § 523(a)(5) Support

■■■■ The purpose of bankruptcy is to provide the debtor with a "fresh start." Therefore, statutory exceptions to discharge must be construed narrowly. *Jones v. Jones (In re Jones)*, 9 F.3d 878, 880 (10th Cir.1993). However, § 523(a)(5)'s underlying policy favors enforcement of familial support obligations over a debtor's "fresh start." *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993).

■■■■ Section 523, exceptions to discharge, provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

---

**8.** The parties argue various other standards of review are applicable to the specific issues on appeal. Those standards would be applicable had Debtor taken direct appeal of the bankruptcy court's decision. However, because

the order being reviewed is in response to Debtor's motion made pursuant to Rules 7052 and 9024, the correct standard of review is abuse of discretion.

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C. § 523(a)(5) (2005). For purposes of this adversary proceeding, whether an obligation arising under a divorce decree is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law. *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989) (citing *In re Goin*, 808 F.2d 1391, 1392 (10th Cir.1987)). The bankruptcy court has the responsibility to make its own determination of the character of the obligation from the facts at hand, not rely on the denomination of the obligation in the divorce decree. *Sampson*, 997 F.2d at 725–26; *Lewis v. Trump (In re Trump)*, 309 B.R. 585, 592 (Bankr.D.Kan.2004).

In the Tenth Circuit, the terms "maintenance" and "support" are entitled to broad application in a realistic manner. *Miller v. Miller (In re Miller)*, 284 B.R. 734, 738 (10th Cir. BAP 2002) (citing *Jones v. Jones (In re Jones)*, 9 F.3d 878, 881 (10th Cir.1993) (The term support "should not be read so narrowly as to exclude everything bearing on the welfare of the child but the bare paying of bills on the child's behalf."). Although state law may provide guidance on the issue of support, " 'a debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law.' " *Jones*, 9 F.3d at 880 (quoting *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986)). The Tenth Circuit has indicated that "[t]he critical question in determining whether the obligation is, in substance, support is 'the function served by the obligation at the time of the divorce.' " *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 725–26 (10th Cir.1993) (quoting *In re Gianakas*, 917 F.2d 759, 763 (3rd Cir.1990)). "This may be determined by considering the relative financial circumstances of the parties at the time of the divorce." *Sampson*, 997 F.2d at 726. In fact, "a spouse's need for support at the time of the divorce is sufficient to presume that the parties' [sic] intended the obligation as support." *Id.* at n. 7.

Precedent exists for finding a second mortgage obligation to be in the nature of nondischargeable support. The Tenth Circuit's *Robinson v. Robinson (In re Robinson)*, 921 F.2d 252 (10th Cir.1990) is directly on point. In *Robinson*, a debtor was ordered to make the payments on a second deed of trust and to hold his former spouse harmless from the same. *Robinson*, 921 F.2d at 253. The bankruptcy court determined that the obligation was in the nature of alimony, maintenance or support, and both the district court and the Tenth Circuit agreed. *Id.*

Additionally, bankruptcy courts in this circuit have reached similar results. In *In re Trump*, the bankruptcy court was presented with facts similar to this case and determined that a debtor's obligation on a second mortgage was in the nature of support, notwithstanding that the divorce decree did not label it as such. *Lewis v. Trump (In re Trump)*, 309 B.R. 585, 593–94 (Bankr.D.Kan.2004). Other types of debt allocations have also been held to be in the nature of support. For example, in *In re Polishuk*, the bankruptcy court determined that a debtor's obligation under a divorce decree to pay and hold harmless a former spouse from credit card debt was "in substance, alimony, maintenance and/or support" based on the former spouse's financial condition at the time of the divorce. *Polishuk v. Polishuk (In re Polishuk)*, 243 B.R. 408, 419–20 (Bankr. N.D.Okla.1999).

In this case, the bankruptcy court's conclusion that the second mortgage obligation was in the nature of support to the extent that it allowed Debtor's child to remain in the marital home until the age of 18 is supported by the evidence. The party objecting to the discharge of a debt need only prove by a preponderance of the evidence that the debt is not dischargeable. *Jones v. Jones (In re Jones)*, 9 F.3d 878, 880 (10th Cir.1993). Ex–Wife testified at trial that it would have been impossible for her and the minor child to stay in the marital residence if Debtor did not pay the second mortgage obligation. *Transcript of December 20, 2005, Bench Trial* at 22, *in* Appellant's App. Vol. I at 65. Debtor did not refute this evidence to any extent. Thus, Ex–Wife met her burden of proof.

The bankruptcy court looked to the actual effect of the payment of the second mortgage obligation and determined it was in the nature of support. This is the correct approach. *See Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989). Under these circumstances, it cannot be said that the bankruptcy court reached an arbitrary, capricious, whimsical, or manifestly unreasonable conclusion. There being no abuse of discretion, the decision of the bankruptcy court that Debtor's obligation was nondischargeable support must be affirmed.

**B. The Bankruptcy Court Correctly Denied Debtor Relief Under Rule 9024 on Grounds of Surprise**

Pursuant to Federal Rule of Bankruptcy Procedure 9024, and on the basis of "surprise" (Federal Rule of Civil Procedure 60(b)(1)), Debtor requested relief from the bankruptcy court's ruling that $7,000 in payments he made on the second mortgage obligation directly to Ex–Wife were allocable to the dischargeable portion thereof. Debtor sought to reopen the record to introduce a letter from his counsel to Ex–Wife that appears to instruct her on how the $7,000 in payments on the second mortgage obligation were to be allocated. *Appellant's Brief* at 41–42. Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir.2000) (internal quotation marks omitted).

Debtor claims he was "surprised" at trial by the issue of whether the $7,000 payments should be allocated to the dischargeable or nondischargeable portion of Ex–Wife's claim because it was not raised in any of the pleadings, summary judgment memoranda, pre-trial order, proposed findings of fact and conclusions of law or trial briefs. *Appellant's Brief* at 41–42. However, Debtor did not object to such issue when it was raised at trial. Unfortunately, Debtor's counsel admits that "the legal significance of this issue was not clear to [him] until after the bankruptcy court entered its findings and fact and conclusions of law." *Id.* As the bankruptcy court correctly points out, "the remedy for coping with surprise is not to seek reversal after an unfavorable verdict, but a request for a continuance at the time the surprise occurs." *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987) (internal quotation marks omitted). At trial, Debtor made no showing that he was surprised, nor did he request a continuance. *Memorandum Decision* at 16–17, *in* Appellant's App. Vol I at 150–51. No exceptional circumstances are presented here. Therefore, the bankruptcy court did not abuse its discretion when it denied Debtor relief under Rule 9024.

**C. The Bankruptcy Court's Award of Attorney's Fees is Affirmed in Part, and Reversed in Part**

In its *Memorandum Decision,* the bankruptcy court awarded Ex–Wife a judgment

in the amount of $37,542.60. *Memorandum Decision* at 18, *in* Appellant's App. Vol I at 152. Of this amount, $13,983.97 is attributable to attorney's fees.[9] The total award represents four different categories of attorney's fees: 1) $2,000 in fees incurred in connection with Ex–Wife's priority claim in Debtor's second Chapter 13 case; 2) $1,500 in fees incurred in connection with Ex–Wife's priority claim in Debtor's third Chapter 13 case; 3) $4,500 in fees incurred in connection with Debtor's motion to clarify the nature of the second mortgage obligation and appeal in the state court system; and 4) $5,983.97 in fees incurred in connection with this adversary proceeding relating to the nondischargeability of the second mortgage obligation.[10] *Transcript of December 29, 2005, Bench Decision* at 21–26, *in* Appellant's App. Vol. I at 126–131. The bankruptcy court based its award of attorney's fees on a Utah statute which provides in pertinent part as follows:

> (2) In any action to enforce an order of custody, parent-time, child support, alimony, or division of property in a domestic case, the court may award

costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense. The court, in its discretion, may award no fees or limited fees against a party if the court finds the party is impecunious or enters in the record the reason for not awarding fees.

Utah Code Ann. § 30–3–3(2) (2006). For the following reasons, the bankruptcy court's award of attorney's fees is affirmed in part, and reversed in part.

 Under the "American Rule" applied in federal litigation, a prevailing party is not ordinarily entitled to collect attorney's fees from his opponent. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This general rule applies to bankruptcy litigation. *In re Reid*, 854 F.2d 156, 161–62 (7th Cir.1988); *All Am. of Ashburn v. Fox (In re Fox)*, 725 F.2d 661, 662 (11th Cir.1984). However, there are two major exceptions to the "American Rule": (1) the rule is abrogated when the parties have entered a contract that shifts attorney's fees, and (2) the rule

---

9. At trial, Ex–Wife introduced evidence that she had actually incurred attorney's fees and costs totaling $199,575.82 in litigation with Debtor stemming from the divorce decree. *See Memorandum Decision* at 13 n. 15, *in* Appellant's App. Vol. I at 147. This is not surprising considering that following the entry of the divorce decree, Debtor commented that he would never pay a dime of the obligations. *See Transcript of December 20, 2005, Bench Trial* at 5, *ll.* 5–7, *in* Appellant's App. Vol. I at 61.

10. Ex–Wife was also awarded attorney's fees by Judge Clark in Debtor's first Chapter 13 case in the amount of $5,118.80. These fees were incurred in collecting arrearages under the divorce decree and had been reduced to judgment in state court. Therefore, Judge Clark found them to be in the nature of nondischargeable support. *See Transcript of Proceedings held March 13, 2001*, at 47–48, *in* Appellant's App. Vol. II at 396–397; *Order on*

*Order to Show Cause In Re: Contempt and Child Support and Alimony Arrearages* at 4–5, *in* Appellee's App. at 49–50. In Debtor's second Chapter 13, Judge Boulden also awarded Ex–Wife attorney's fees in the amount of $957.65. These fees related to an order to show cause dealing with child support and the collection of child support in state court. Based on the record, however, it does not appear that these attorney fees were ordered by the state court. *See Transcript of March 15, 2002, Hearing on Objection to Claim # 7 Filed by Cindy Busch and Objection to Trustee's Motion to Dismiss and Motion to Abate* at 29–30, 89, *in* Appellee's App. at 227–28, 287. Regardless, these attorney's fees awards are not issues on appeal because Debtor stipulated to the fees as nondischargeable and the bankruptcy court ordered that the stipulated fees were nondischargeable in its October 4, 2005, summary judgment ruling.

is abrogated when a statute provides for fee shifting. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1237–38 (10th Cir. 1999).

Generally, bankruptcy courts have refused to award attorney's fees to § 523(a)(5) prevailing parties for fees incurred in connection with litigating the issue of dischargeability. *See, e.g., Renfrow v. Draper*, 232 F.3d 688 (9th Cir. 2000); *Lewis v. Trump (In re Trump)*, 309 B.R. 585 (Bankr.D.Kan.2004); *Dennison v. Hammond (In re Hammond)*, 236 B.R. 751 (Bankr.D.Utah 1998); *Colbert v. Colbert (In re Colbert)*, 185 B.R. 247 (Bankr. M.D.Tenn.1995); *Shearer v. Shearer (In re Shearer)*, 124 B.R. 862 (Bankr.N.D.Fla. 1990); *but see Lawrence v. Lawrence (In re Lawrence)*, 237 B.R. 61, 86 (Bankr. D.N.J.1999). The primary reason has been lack of a specific provision under the Bankruptcy Code authorizing fee awards to prevailing creditors in § 523 dischargeability actions.[11] *Colbert*, 185 B.R. at 248. However, after the Supreme Court's recent decision in *Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, — U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), this rationale is no longer persuasive.

In *Travelers*, the Supreme Court was asked to consider "whether federal bankruptcy law precludes an unsecured creditor from recovering attorney's fees authorized by a prepetition contract and incurred in postpetition litigation." *Id.* at 1202. The question arose because the Ninth Circuit Court of Appeals had adopted a rule that attorney's fees are not recoverable in bankruptcy for litigating issues peculiar to federal bankruptcy law. *Id.* The Supreme Court essentially concluded that because there is no Bankruptcy Code provision ex-

pressly disallowing claims for attorney's fees incurred by creditors in the litigation of bankruptcy issues, the Ninth Circuit's rule could not stand. *Id.*

■ Although in *Travelers*, the issue was raised in the context of attorney's fees which were shifted by contract, the reasoning in *Travelers* is equally applicable to attorney's fees shifted by state statute. This is particularly so given the Supreme Court's emphasis on the long recognized principle that the basic federal rule in bankruptcy is that state law governs the substance of claims. *Id.* at 1205. Further, the Supreme Court stated " '[p]roperty interests are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.' " *Id.* (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

Here, if Ex–Wife were the prevailing party in state court litigation enforcing the obligations owed her under the divorce decree, the court would be permitted to award her attorney's fees pursuant to Utah Code Ann. § 30–3–3(2). Ex–Wife's participation in the second and third Chapter 13 cases seeking payment of her priority claim, and her litigation in the Chapter 7 nondischargeability adversary are certainly actions in the nature of enforcing the terms of the divorce decree. And no dispute exists regarding who is the prevailing party. In the Chapter 13 cases, Ex–Wife secured payment of her priority claim in full under the plan, and in the Chapter 7 case, the bankruptcy court held the second mortgage obligation to be nondischarge-

---

**11.** However, § 523(d) allows for debtor attorney's fees if the debtor successfully shows that a creditor was not substantially justified when

it requested a determination of dischargeability of consumer debt.

able. According to the Supreme Court, Ex–Wife's enforcement of her interests in the bankruptcy court actions should not be analyzed differently than enforcement of her interests in state court. In state court, attorney's fees may be awarded. There is no federal interest requiring a different result in a bankruptcy action. Thus, attorney's fees may be awarded in the bankruptcy actions. Accordingly, we affirm the bankruptcy court's award of attorney's fees incurred in connection with Ex–Wife's participation in the Chapter 13 cases and the Chapter 7 dischargeability adversary action.

Our conclusion is also supported by the result reached by the Supreme Court several years ago in *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Cohen*, tenants brought a Chapter 7 nondischargeability adversary case based on a claim of § 523(a)(2)(A) fraud against a landlord who had charged them rent in excess of rent control amounts. *Id.* at 215, 118 S.Ct. 1212. Not only did the bankruptcy court determine that the excess rent debt was not dischargeable, it awarded the tenants treble damages and attorney's fees. The treble damages and attorney's fees award were authorized by a provision of the New Jersey Consumer Fraud Act.[12] *Id.* at 216, 118 S.Ct. 1212. Both the district court and the Third Circuit Court of Appeals affirmed. *Id.* The Supreme Court also affirmed, determining that a § 523(a)(2)(A) debt encompasses any liability arising from money and property that is fraudulently obtained, including treble damages, attorney's fees,

and other relief that may exceed the value obtained by the debtor. *Id.* Thus, the Supreme Court upheld an award of attorney's fees to a prevailing party in dischargeability litigation based on a state statute's authorization of the fees.

In this case, a Utah statute permits attorney's fees to be awarded to a prevailing party for enforcement of obligations under a divorce decree. And we have already established that Ex–Wife is clearly the prevailing party. We see no reason why our interpretation of § 523(a)(5) debt should differ from the Supreme Court's interpretation of § 523(a)(2)(A) debt in *Cohen*. The attorney's fees in *Cohen* and here are both based on a state statute authorizing such an award. Therefore, we interpret the § 523(a)(5) debt to encompass the attorney's fees liability that has arisen as a result of Debtor's nonpayment of the underlying debt imposed on him by the divorce decree. Based upon the Supreme Court's teachings in *Travelers* and the result it reached in *Cohen*, the attorney's fees awarded by the bankruptcy court that were incurred by Ex–Wife in the bankruptcy litigation should be affirmed.[13]

■ However, the attorney's fees Ex–Wife incurred in state court relating to Debtor's motion to clarify the divorce decree and its ensuing appeal were not reduced to judgment in state court. The bankruptcy court is accordingly without authority to award those fees or determine them to be nondischargeable debts in this proceeding.[14] The bankruptcy court does

---

12. N.J. Stat. Ann. §§ 56:8–2, 56:8–19 (West 1989).

13. We note, however, that the attorney's fees awarded by the bankruptcy court cannot be allowed as a claim against the estate because such claim would be for a debt that was unmatured on the date of the filing of the petition and is excepted from discharge under

§ 523(a)(5). *See* § 502(b)(5); *Lawrence v. Lawrence (In re Lawrence)*, 237 B.R. 61, 86 (Bankr.D.N.J.1999).

14. Had the attorney's fees been reduced to judgment in state court, there would be ample authority for the bankruptcy court to determine they are not nondischargeable so long at

not have first hand knowledge of the proceedings before the state court. Therefore, it is not in the best position to determine whether those fees are legitimate and reasonable, or whether Ex–Wife was the substantially prevailing party in those proceedings. Ex–Wife must seek an award of those fees from the state court. To the extent necessary to accomplish this task, the bankruptcy court can modify the automatic stay to allow her to at least seek those fees. Additionally, should the state court award attorney's fees, it can be permitted to exercise its concurrent jurisdiction to determine whether Debtor's obligation is in the nature of support and nondischargeable under § 532(a)(5).

## V. CONCLUSION

The bankruptcy court's order is affirmed in part, and reversed in part. The bankruptcy court did not abuse its discretion in determining that payment of the second mortgage obligation was in the nature of nondischargeable support until the parties' child attained age 18. Additionally, the bankruptcy court did not abuse its discretion in denying Debtor relief from the judgment under Rule 9024 based on the grounds of surprise. Those portions of the bankruptcy court's order are affirmed. Further, the bankruptcy court's award of attorney's fees incurred by Ex–Wife in connection with litigation in bankruptcy court is also affirmed. However, that part of the bankruptcy court judgment awarding attorney's fees in connection with state court litigation must be reversed. Therefore, the bankruptcy court's order is re-

they are in the nature of support. *See, e.g., Jones v. Jones (In re Jones)*, 9 F.3d 878 (10th Cir.1993); *Polishuk v. Polishuk (In re Polishuk)*, 243 B.R. 408 (Bankr.N.D.Okla.1999).

1. For example, § 523(d) allows for the award of attorney's fees to a prevailing debtor arising out of a proceeding to determine the

versed in part, with instructions to amend its judgment in accordance with this Opinion.

BERGER, Bankruptcy Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that the bankruptcy court did not abuse its discretion when it determined that the payment of the second mortgage obligation was in the nature of nondischargeable support. I respectfully disagree with the majority's conclusion that the bankruptcy court is imparted with jurisdiction to award attorney's fees attendant to § 523(a)(5) proceedings.

Generally, bankruptcy courts have refused to award attorney's fees to § 523(a)(5) prevailing parties for fees incurred in connection with litigating the issue of dischargeability. The primary reason has been lack of a specific provision under the Bankruptcy Code authorizing fee awards to prevailing creditors in § 523 dischargeability actions.[1] *Colbert v. Colbert (In re Colbert)*, 185 B.R. 247, 248 (Bankr.M.D.Tenn.1995). Such rationale is compelling. Congress knows how to provide for the award of attorney's fees in bankruptcy proceedings. As eloquently stated by the court in *In re Colbert:*

> Under the well-established principle of statutory interpretation *expressio unius est exclusio alterius* [the expression of one thing is to the exclusion of the other], the inclusion of § 523(d) indicates a congressional intent that each party bear his or her own litigation costs in all other dischargeability actions.

dischargeability of a debt under the fraud exception set out in § 523(a)(2), and § 506(b) allows an oversecured creditor to recover reasonable attorney's fees and costs under certain circumstances. No such attorney's fees provisions are found in either § 523(a)(5) or § 523(a)(15).

*Id.* (footnote omitted). As further explained by the *Colbert* court, the foregoing principle has been recognized by the Supreme Court. *Id.* at 248 n. 1.

Importantly, the "domestic relations exception" to federal jurisdiction strips the federal courts of authority to grant or modify a divorce or alimony decree. *Ankenbrandt v. Richards,* 504 U.S. 689, 701–02, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). A bankruptcy court lacks jurisdiction to issue divorce and alimony decrees, or even to entertain claims for alimony. *Id.* The domestic relations exception also prohibits consideration of child custody cases. *Id.*

The domestic relations exception emanates from *Barber v. Barber,* 62 U.S. 582, 21 How. 582, 16 L.Ed. 226 (1859), in which the Supreme Court allowed the federal district court to enforce an alimony decree. However, and most importantly, the Supreme Court issued a limitation on federal jurisdiction in the area of domestic relations:

> Our first remark is—and we wish it to be remembered—that this is not a suit asking the court for the allowance of alimony. That has been done by a court of competent jurisdiction. The court in Wisconsin was asked to interfere to prevent that decree from being defeated by fraud.
>
> We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce *a vinculo,* or to one from bed and board.

*Barber,* 62 U.S.(21 How.) at 584, quoted by the Court in *Ankenbrandt,* 504 U.S. at 694, 112 S.Ct. 2206. The Court in *Ex Parte Burrus* stated that "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). In *McIntyre v. McIntyre,* 771 F.2d 1316 (9th Cir. 1985) (opinion of Kennedy, J.), the court stated that, "[T]he exception to jurisdiction arises in those cases where a federal court is asked to grant a decree of divorce or annulment, or to grant custody or fix payments for support. . . ." *Id.* at 1317–18 (*cited with approval in Ankenbrandt,* 504 U.S. at 703 n. 6, 112 S.Ct. 2206).

Federal courts have jurisdiction to enforce state court orders of support. However, the federal courts lack jurisdiction to award support. In the case below, the bankruptcy court was without jurisdiction to award attorney's fees, which frequently is tantamount to the award of support,[2] whether such arose prior to or after the filing of the debtor's bankruptcy petition. Since none of the prepetition attorney's fees were reduced to judgment, the bankruptcy court cannot either grant or determine as nondischargeable such prepetition fees. In contrast, if the attorney's fees had been reduced to judgment by a state court of competent jurisdiction prior to the filing of the debtor's bankruptcy petition, then the bankruptcy court would have jurisdiction to determine the dischargeability of such fees under § 523(a)(5).

The pertinent Utah statute that allows the award of costs and attorney's fees is limited to a "domestic case." The parties do not provide, and I have been unable to ascertain by independent research, what exactly constitutes a domestic case under the laws of the State of Utah. However, it is difficult to envision that dischargeability

---

**2.** *See, e.g., Jones v. Jones (In re Jones),* 9 F.3d 878 (10th Cir.1993), wherein the court found that court-ordered attorney's fees arising from postdivorce custody actions are in the nature of support.

proceedings filed in a United States bankruptcy court constitute a "domestic case" as contemplated under the Utah statutes. In *Condie v. Condie*, 139 P.3d 271 (Utah Ct.App.2006), the debtor's ex-spouse (Seals) filed an adversary proceeding under § 523(a)(15) to determine the dischargeability of debtor's hold harmless obligations to Seals under their decree of divorce. The bankruptcy court ultimately entered judgment in Seals' favor under § 523(a)(15). Upon conclusion of such adversary proceedings, Seals then asked for and was awarded attorney's fees by the state divorce court for the filing of the adversary proceeding in Condie's bankruptcy case. Condie asserted that Seals should have sought such attorney's fees in the bankruptcy court proceeding. However, the Utah court of appeals agreed with Seals' argument that such a request to the bankruptcy court would have been futile "because, as a general rule, attorney fees are not awardable under federal bankruptcy law for enforcement of obligations contained in a divorce decree." *Condie* 139 P.3d at 275. Section 523(a)(15), like § 523(a)(5), pertains to domestic relations obligations and neither contains a provision that allows the award of attorney's fees and costs by the bankruptcy court incurred incidental to the filing of an adversary proceeding to determine dischargeability. Agreeing with the court in *Dennison v. Hammond (In re Hammond)*, 236 B.R. 751 (Bankr.D.Utah 1998), the Utah Court of Appeals stated that "Seals did not have a basis for receiving attorney fees in federal bankruptcy court." *Condie*, 139 P.3d at 276. The court went on to state that "We are convinced that it would have been futile for Seals to have asked for

attorney fees in the bankruptcy proceedings." *Id.* The Condie court also relies upon Colbert to reach its conclusion. *Id.*

"[I]t is clear that [i]n the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise." *Jordan v. Shattuck Nat'l Bank*, 868 F.2d 383, 386 (10th Cir.1989) (internal quotation marks omitted). *See also In re Reed*, 147 B.R. 571, 573 (D.Kan.1992) ("Fundamental to our system of federalism is the notion that state courts are the final arbiters of the State's own law. Federal courts are bound by the state court's interpretations of their laws, absent such extreme circumstances as those involving federal constitutional issues." (internal quotation marks omitted) (citation omitted)). A non-debtor ex-spouse may not seek attorney's fees in an action under § 523(a)(15); I believe that the same prohibition applies to a proceeding initiated under § 523(a)(5). However, although the bankruptcy court is bound by substantive state law, it is not bound by a state court's determination that a bankruptcy court does not have jurisdiction to hear a particular matter.[3]

Additionally, with regard to certain facets of domestic relations and federal jurisdiction, the law pertaining to abstention by the bankruptcy court demonstrates the policy that federal courts should limit their intrusion into domestic relations. *See* 28 U.S.C. § 1334(c)(2) and *Ankenbrandt v. Richards*, 504 U.S. 689, 704–05, 112 S.Ct. 2206, 119 L.Ed.2d 468.

> [W]hen an issue exists, such as child custody, which could arguably be related

---

**3.** *See Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735, 1749–50, 164 L.Ed.2d 480 (2006). *See also Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), wherein the Supreme Court did not deter-

mine that the domestic relations exception deprived the federal courts of jurisdiction over a state law tort claim between ex-spouses.

to the bankruptcy case due to its impact on the debtor's finances, or perhaps modification of a state court support order payable from property other than property of the estate, mandatory abstention may be appropriate.

*Collier Family Law and the Bankruptcy Code* ¶ 5.01[2][e], at 5–21 (Henry J. Sommer, Margaret Dee McGarity, & Alan N. Resnick eds., 2006).

The bankruptcy courts should generally defer to the special expertise held by the state courts in domestic proceedings. As stated in *Ankenbrandt* when it confirmed the continued vitality of the domestic relations exception:

> Not only is our conclusion rooted in respect for this long-held understanding, it is also supported by sound policy considerations. Issuance of decrees of this type not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

*Ankenbrandt*, 504 U.S. at 703–04, 112 S.Ct. 2206.

The Supreme Court's decision in *Travelers* does not change the foregoing analysis. The *Travelers* decision is easily distinguishable. *Travelers* emanated from the debtor's breach of a negotiated commercial contract within the confines of complex Chapter 11 proceedings and a confirmed plan of reorganization. The holding in *Travelers* is narrow:

> Accordingly, we express no opinion with regard to whether, following the demise of the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees. We conclude only that the Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred litigating issues of bankruptcy law.

*Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, —— U.S. ——, —— – ——, 127 S.Ct. 1199, 1207–08, 167 L.Ed.2d 178 (2007). In *Travelers*, the respondent, for the first time and before the Supreme Court, attempted to argue that other provisions of the Bankruptcy Code established a basis upon which to disallow Travelers' claim for attorney's fees. Although these arguments may or may not have been viable, the *Travelers* Court refused to consider these new arguments that had not been raised or addressed. Hence, the holding in *Travelers* is so narrow as not to be of much utility in determining whether the bankruptcy court properly awarded attorney's fees attendant to a § 523(a) proceeding to determine dischargeability. The *Travelers* holding does not compel the conclusion that the bankruptcy court had jurisdiction to award attorney's fees. Here, the state court would be permitted to award Ex–Wife attorney's fees pursuant to Utah Code Ann. § 30–3–3(2).

The majority also cites to the Supreme Court case of *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), as support. Again, the *Cohen* decision is distinguishable from the case below. The proceedings did not emanate from domestic relations and, hence, the domes-

tic relations exception would not impair the award of attorney's fees or treble damages. Although the *Cohen* decision does not reflect whether the issue of jurisdiction was raised, even if the bankruptcy court in *Cohen* held such jurisdiction, it was not constrained by the domestic relations exception.

As recently as 2006, the Supreme Court recognized the domestic relations exception to federal jurisdiction.[4] Although the *Marshall* Court emphasized that the exception applies to a narrow range of domestic relations issues, the Court reaffirmed the existence of the exception and that it applies to divorce, alimony, and child custody decrees.[5] Since the determination of the dischargeability of an obligation under § 523(a)(5) is in the nature of enforcement of a domestic relations obligation, the bankruptcy court has jurisdiction to adjudicate the matter. However, the bankruptcy court lacks jurisdiction to award attorney's fees attendant to such proceedings. This is particularly the case when the attorney's fee award does not have a statutory basis under the Code and is predicated on a state attorney fee statute limited to a "domestic case." The award of such attorney's fees are in the nature of support and the bankruptcy court is specifically deprived of jurisdiction to award such fees; in the alternative, the award of attorney's fees is without the bankruptcy court's jurisdiction in that it constitutes a *de facto* divorce or support decree.

The attorney's fees Ex–Wife incurred in state court relating to Debtor's motion to clarify the divorce decree and its ensuing appeal were not reduced to judgment in state court. The bankruptcy court is accordingly without authority to award those fees or determine them to be nondis-

chargeable debts in this proceeding.[6] Ex–Wife must seek an award of prepetition and postpetition attorney's fees and costs from the state court, whether such were incurred in state court or bankruptcy court proceedings. To the extent necessary to accomplish this task, the bankruptcy court can modify the automatic stay or discharge injunction to allow Ex–Wife to seek those fees. Additionally, should the state court award attorney's fees, it can exercise its concurrent jurisdiction to determine whether Debtor's obligation is in the nature of support and nondischargeable under § 532(a)(5). The bankruptcy court's intrusion into state domestic relations law by awarding attorney's fees is an act that the Supreme Court has warned off the federal courts for almost 150 years. The Supreme Court's decisions in *Travelers* and *Cohen* do not affect 150 years of jurisprudence that underpin the domestic relations exception to federal jurisdiction.

For the foregoing reasons, I concur in part and respectfully dissent in part.

---

4. *Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735, 1746, 164 L.Ed.2d 480 (2006).

5. *Id.*

6. *See* majority Opinion at n. 14.